COURT
OF APPEALS

                                      SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                      NOS.   2-07-375-CR

2-07-376-CR

 

RICHARD MORGAN                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.      Introduction








In four points, Appellant Richard Morgan makes a
confrontation clause challenge under both the United States and Texas
Constitutions to evidence excluded under Texas Rule of Evidence 412 (the Arape
shield law@).  He also challenges the legal and factual
sufficiency of evidence to support his conviction for aggravated sexual assault
of a child younger than fourteen years of age. 
We affirm.  

II.     Factual and procedural
history

A grand jury indicted Appellant for two counts of
indecency with a child and five counts of aggravated sexual assault of a
child.  The complainant is K.W., who was
thirteen years old at the time of the alleged offenses.  Appellant pleaded not guilty, and the case
was tried to a jury.

Arlington Police Officer Mary Almy, assigned to
the juvenile unit, testified that she received initial information about K.W.
on December 11, 2006, that K.W. was thirteen years old, and that she was to be
interviewed the next day, December 12.  A
CPS investigator interviewed K.W. on December 12; Officer Almy observed the
interview from a monitor hooked to a two-way closed circuit television.  Police had a description of a suspect by that
time, a picture of Appellant provided by K.W.=s
grandmother, and Appellant=s last
name.  In the interview, K.W. denied any
type of sexual contact with Appellant to the CPS investigator.  K.W. also denied any sexual conduct with
Appellant to Officer Almy and other police officers.








At a second interview with the same CPS
investigator the following day, Officer Almy observed that K.W. admitted to
engaging in sexual conduct with the suspect, who by then had been identified as
Appellant.  The officers referred K.W. to
Cook Children=s Medical Center for a CARE team
examination.  Crystal Utley, a former
college-level pediatric nursing teacher and member of the Cook Children=s CARE
team, performed the exam.  She testified
that K.W. provided a history of recent sexual activity involving vaginal, anal,
and oral intercourse.  Utley=s visual
exam was consistent with the sexual activity described by K.W.  She found a healed transection of the hymen,
meaning it was a complete tear all the way to the base.  But she stated that it was not possible to
date the tear since healing occurs quickly, and the tear could have occurred up
to a year before the exam.  She found no
evidence of trauma of the anus or vagina. 
But she explained that an anal exam may be normal even after
penetration.








K.W. testified that she met Appellant in the fall
of 2006 while living with her grandmother in an Arlington condominium.  Appellant, a maintenance worker at the
complex, had seen K.W. around the complex and initiated conversation with K.W.
by asking for her name.  K.W. stated that
Appellant later left a note on the passenger door of her family=s truck,
asking for her phone number; she wrote her number down and gave it to Appellant
while he waited outside.  K.W. testified
that she talked to him that evening and revealed her age to Appellant and his
nephew P.J. during the conversation. 
K.W. testified that Appellant responded that Aage didn=t matter
and that he knew [she] was 13 and it was okay.@

K.W. testified that she and Appellant first
arranged to see each other when K.W. was spending the night at a friend=s
apartment.  K.W. gave Appellant
directions to her friend=s apartment, told the friend she
was meeting her brother, and walked over to Appellant=s truck,
which by then was parked inside the apartment complex.  K.W. stated that the two kissed inside the
truck and that Appellant touched her breasts with his hands and mouth.  K.W. testified that he Amight
have touched [her] vagina@ but it was Aover
[her] pants.@ 
She testified this incident lasted about thirty minutes.  She stated that Akissing
and touching@ occurred in Appellant=s maroon
car multiple times in parking areas around the condominium complex.

K.W. testified that the next meeting between K.W.
and Appellant occurred when Appellant picked K.W. up again in the maroon car
and drove off the condominium complex to an apartment complex.  K.W. testified that Appellant asked her if
she Awanted
to get in the back seat@ and she said Ayes.@  K.W. stated that she took off her clothes,
they had sex, i.e., vaginal intercourse, and Appellant performed oral sex on
her.








K.W. related details of her next encounter with
Appellant at a motel in Arlington with pink doors and palm trees on the
signs.  K.W. recalled that it was
Appellant=s idea to go there.  The two had vaginal intercourse at the motel
while pornography, paid for by Appellant, played on the television.  For their next encounter, K.W. testified that
Appellant picked her up at her junior high school at 9:00 a.m. and drove her to
a yellow house in Fort Worth, where he said he lived with his girlfriend.  K.W. described the dogs that were in the
house.  While there, Appellant and K.W.
had vaginal intercourse, and each performed oral sex on the other.  K.W. testified that Appellant had previously
given her a pornographic videotape depicting fellatio in order to teach K.W. to
perform it.  K.W. also testified that
anal intercourse occurred while they were at this house and that it was painful
for her.  K.W. stated that she had to
crawl out the window when others arrived at the house and had to jump over a
chainlink fence.  Appellant allegedly
helped her over the fence to get to the car. 
K.W. testified that Appellant told her to tell people that she was Ahis
little sister@ if she were ever questioned
about why they were together.








The last encounter between K.W. and Appellant
occurred in December 2006, when Appellant threw something at K.W.=s window
late at night and told her that he would come back and pick her up.  He picked her up at around 2:00 a.m. in a
black truck and suggested she bring blankets. 
Appellant brought his nephew P.J., and the three went to an elementary
school.  Appellant told P.J. to park the
car while he and K.W. went over to an area near the exterior of the school and
engaged in vaginal intercourse on the blankets under an awning over a sidewalk.

When they returned to the condominiums, K.W. saw
her grandmother outside waiting for her; Appellant let K.W. out of the car away
from her condominium.  K.W. testified
that her grandmother was upset and crying and that she had called the police.  K.W. stated that she did not tell her
grandmother or the police the Atruth@ about
any sexual conduct at that time.  She
told her grandmother a story that she made upCthat she
had been with a guy named Eric.

K.W. testified that police officers took her to
the Arlington Police Department where a CPS worker named Emily Jamada
interviewed her.  K.W. confirmed that she
told Jamada Anothing happened.@  K.W. did not know Appellant=s first
name at that time; she assumed it was AAmber@ because
she had seen that name tattooed on one of Appellant=s arms
and AMorgan@ on the
other.  The police obtained a photograph
of Appellant that her grandmother found hidden behind her dresser, as well as
K.W.=s cell
phone containing voicemail messages from Appellant.








K.W. stated that she later talked with her
brother, who was twenty years old and Avery
understanding,@ and that she told him what had
really happened with Appellant.  She then
told her grandmother about the sexual nature of the relationship before
returning to the police department to again speak with Jamada.  K.W. testified that she told Jamada details
about instances of sexual conduct with Appellant at that time.  With Officer Almy, she viewed a photo lineup
and picked out Appellant=s photo.

The police had K.W. Atext@
Appellant, who returned her call the next day. 
K.W. confirmed that police recorded Appellant=s
conversation with her, which Appellant urged her to hide the photograph of
himself that he had given her and told her to say that she had been with his
nephew, P.J., if she were asked.  K.W.
acknowledged that Appellant was concerned about being arrested if the police
found his picture.  The State introduced
the recording and photograph of Appellant into evidence along with photographs
of the yellow house with the dogs and the chain link fence, the maroon car
sitting in the driveway of the house, and photographs of Appellant=s
tattoos.








Appellant=s
sister, called by the defense, testified that she was present several months
later when K.W. called Appellant=s
girlfriend, who put the call on speakerphone so that Appellant=s sister
heard both ends of the conversation. 
According to Appellant=s
sister, K.W. was crying, expressed that she was Asorry,@ and
stated that Ashe was forced@ to tell
police that she had sex with Appellant because her grandmother was threatening
to throw her out and she had nowhere else to go, that they Aforced
[her] into [a] confessi[on],@ and
that she never had sex with Appellant; Ait never
happened.@ 
K.W. testified that she told Appellant=s
girlfriend she would write a letter stating that sex with Appellant never
happened and that she would have been willing to lie to protect Appellant but
that she never wrote the letter.

The jury found Appellant guilty of two counts of
indecency with a child and five counts of aggravated sexual assault of a
child.  Appellant now appeals his
conviction on the aggravated sexual assault counts.

III.     Right to confront and cross-examine witness
under United States

and
Texas Constitutions

 








At a hearing on pre-trial matters, the State
requested that K.W. be seated as a witness before the jury was brought in.  When she was called to testify, K.W. was
brought to the witness stand and seated prior to the jury entering the
courtroom.  Appellant objected that the
entry and seating of K.W. outside the jury=s
presence, with the consequent inability of any jury member to see that she was
pregnant, violated his right of confrontation under the Texas and United States
Constitutions because she had not taken the stand Ain a
normal capacity as a witness.  She has
been placed on the stand prior to the jury entering the room because she=s
apparently pregnant.@ 
Appellant further stated that K.W.=s
pregnancy may Ahave a relevant impact on her
credibility with the jury.@  The trial court overruled his objection.[2]

Appellant contends by his first two points that
the trial court violated his Sixth and Fourteenth Amendment rights under the
United States Constitution and his rights under Article I, Section 10 of the
Texas Constitution to confront and cross-examine K.W. because the trial court
prohibited him from showing the jury that K.W. was apparently pregnant.[3]  Appellant argues that he was denied his right
to confront K.W. because her apparent pregnancy should not have been excluded
under Texas Rule of Evidence 412 because it was relevant and probative to
demonstrate Abias or motive@ on her
part to lie about any sexual activity between K.W. and Appellant.  He also argues that the probative value of
the evidence outweighed any danger of unfair prejudice.








The standard of review for an alleged violation
of the constitutional right to confront a witness is abuse of discretion.  Lagrone v. State, 942 S.W.2d 602, 613
(Tex. Crim. App.), cert. denied, 522 U.S. 917, 118 S. Ct. 305
(1997).  ATrial
judges retain wide latitude insofar as the Confrontation Clause is concerned to
impose reasonable limits on such cross-examination based on concerns about,
among other things, harassment, prejudice, confusion of the issues, the witness=[s]
safety, or interrogation that is repetitive or only marginally relevant.@  Delaware v. Van Arsdall, 475 U.S. 673,
679, 106 S. Ct. 1431, 1435 (1986); accord Davis v. Alaska, 415 U.S. 308,
316, 94 S. Ct. 1105, 1110 (1974) (holding right to cross-examination is A[s]ubject
always to the broad discretion of a trial judge to preclude repetitive and
unduly harassing interrogation@); LaPointe
v. State, 166 S.W.3d 287, 296 n. 11 (Tex. App.CAustin
2005, pet. dism=d).

Each confrontation clause issue must be weighed
on a case-by-case basis, carefully taking into account the defendant=s right
to cross-examine and the risk factors associated with the admission of the
evidence.  Lopez v. State, 18
S.W.3d 220, 222 (Tex. Crim. App. 2000). 
In weighing whether evidence must be admitted under the confrontation
clause, the trial court should balance the probative value of the evidence
sought to be introduced against the risk its admission may entail.  Id.








Texas Rule of Evidence 412 governs the
admissibility of a complainant=s prior
sexual relationships with third parties in a sexual assault case.  Tex. R. Evid. 412.  Specific instances of a victim=s past
sexual conduct are inadmissible unless (1) the evidence falls within one of
five circumstances listed in rule 412(b)(2) and (2) the trial court finds that
the probative value outweighs the danger of unfair prejudice.  Id.; Boyle v. State, 820 S.W.2d
122, 148 (Tex. Crim. App. 1989) (op. on reh=g) overruled
on other grounds by Gordon v. State, 801 S.W.2d 899, 911 n. 13 (Tex. Crim.
App. 1990).  Rule 412(b) provides:

In a prosecution for
sexual assault or aggravated sexual assault, or attempt to commit sexual
assault or aggravated sexual assault, evidence of specific instances of an
alleged victim=s past sexual behavior is
also not admissible, unless: 

 

(1) such evidence is
admitted in accordance with paragraphs (c) and (d) of this rule; 

 

(2) it is evidence:

 

(A) that is necessary to
rebut or explain scientific or medical evidence offered by the State; 

 

(B) of past sexual
behavior with the accused and is offered by the accused upon the issue of
whether the alleged victim consented to the sexual behavior which is the basis
of the offense charged; 

 

(C) that relates to the
motive or bias of the alleged victim;

 

(D) is admissible under Rule 609; or 

 

(E) that is
constitutionally required to be admitted; and








(3) its probative value outweighs the danger of
unfair prejudice.  

Tex. R. Evid. 412(b).[4]  

The court of criminal appeals has expressed the
rationale of provisions such as rule 412 by stating that

evidence of a rape victim=s prior sexual activity
is of dubious probative value and relevance and is highly embarrassing and
prejudicial.  Often such evidence has
been used to harass the prosecuting victim. 
Sponsors of these statutes assert that they encourage victims of sexual
assault to report the crimes without fear of having their past sexual history
exposed to the public.

 

Allen v. State, 700 S.W.2d 924, 929 (Tex. Crim. App. 1985)
(quoting Bell v. Harrison, 670 F.2d 656, 658 (6th Circ. 1982)).








The right to confront and to cross-examine is not
absolute and may, in appropriate cases, bow to accommodate other legitimate
interests in the criminal trial process. 
Id. at 931 (holding section 21.13 of the Texas Penal Code, the
precursor to rule 412, was constitutional and did not, on its face, violate the
accused=s right
to confrontation); see also Chambers v. Mississippi, 410 U.S. 284, 295,
93 S. Ct. 1038, 1046 (1973).  Moreover,
the Constitution requires only the introduction of otherwise relevant and
admissible evidence.  See United
States v. Nixon, 418 U.S. 683, 711, 94 S. Ct. 3090, 3109 (1974).

The trial took place on October 2, 2007, whichCas the
State points outCwas almost ten months after K.W.
told authorities about the sexual encounters, meaning she was impregnated by
someone else after these alleged offenses occurred.  K.W.=s
credibility was an issue in this case because she was the sole witness to the
alleged sexual conduct by Appellant.  Her
testimony was contradicted by her own previous denials that any such conduct
had occurred.  But her pregnancy, by
itself, was not an indicator of a motive or bias to lie.  See Pedro v. State, No.
03-06-00066-CR, 2007 WL 619492, at *6 (Tex. App.CAustin
Feb. 27, 2007, no pet.) (mem. op., not designated for publication) (holdingAevidence
indicating Y.C. had intercourse with someone other than appellant does not, by
itself, tend to prove or disprove that she would fabricate sexual assault
charges against the appellant@).








When K.W. was on the witness stand, the jury had
an unobstructed view of her face, so they could observe her demeanor and assess
her credibility.  Cf. Romero v. State,173
S.W.3d 502, 507 (Tex. Crim. App. 2005) (holding that defendant=s right
to confrontation was infringed when witness was allowed to testify in a
disguise showing only his ears, tops of his cheeks and bridge of his nose).[5]  Moreover, Appellant was not prevented from
cross-examining K.W., and he did question her about her initial denials of any
sexual conduct with Appellant to the first officer who questioned her, the CPS
officer, other officers, her mother, her grandmother, and Appellant=s
girlfriend.  K.W. denied that she had
told Appellant=s girlfriend that there had been
no sex.  She admitted initially denying
any sexual conduct to the others.  Neither
during cross-examination nor outside the jury=s
presence did Appellant inquire as to why K.W. decided to retract her denials
and testify that specific sexual activity occurred.  On redirect examination by the State, K.W.
stated that she had denied that anything sexual happened because she had not
wanted anything bad to happen to Appellant and that she still had feelings for
him, and she admitted that her grandmother had threatened to make her leave and
that she has had to leave and go to live with her mother.








Any inference that might be drawn from K.W.=s
apparent pregnancy is speculation.  K.W.
was fourteen years old at the time of trial. 
There is no evidence suggesting that K.W. had any motive to falsely
accuse Appellant.  Appellant does not
suggest any logical link between her pregnancy and any motive or bias that
would reflect on her credibility or cause her to falsely accuse him.  In any event, any probative value could not
outweigh the danger of unfair prejudice from exhibiting her post-offense
pregnancy.  Revealing to the jury that at
a point after the alleged offenses occurred she became pregnant by someone else
could only have subjected her to ridicule, embarrassment, and humiliation.  See Stephens v. State, 978 S.W.2d 728,
735 (Tex. App.CAustin 1998, pet. ref=d)
(holding allowing evidence of pregnancy of complainant when raped to show other
past sexual conduct where motive for fabrication of accusations against
defendant was non-existent would have contravened intent of rule 412 and
subjected her to ridicule, embarrassment, and humiliation).








We hold that the trial court did not abuse its
discretion by preventing the jury from viewing K.W.=s
pregnancy because Appellant has not shown that her pregnancy was relevant to
motive or bias and because the exclusion served to avoid prejudice to K.W. and
confusion of the issues.  See id.;
see also McGlothlin v. State, 260 S.W.3d 124, 130B31 (Tex.
App.CFort
Worth 2008, pet. ref=d) (holding exclusion of
evidence that child complainant sexually abused her same-age cousins not denial
of right of confrontation where there was other evidence of prior sexual
conduct and evidence had slight probative value and posed danger of being
overwhelmingly unfairly prejudicial); Ladesic v. State, No. 02‑05‑00444‑CR,
2007 WL 2963755, at *5 (Tex. App.CFort
Worth Oct. 11, 2007, no pet.) (holding trial court=s
refusing cross-examination of complainant about notes related to sexual
relations with other boys not denial of confrontation when court allowed other
examination regarding conduct with boys and any probative value far outweighed
by danger of unfair prejudice under Rule 412(b)(3)); Herrera v. State,
No. 08‑01‑00152‑CR, 2004 WL 321681, *5B6 (Tex.
App.CEl Paso
Feb. 20, 2004, pet. ref=d) (mem. op., not designated for
publication) (holding no abuse of discretion and no denial of confrontation by
excluding diary notes of other possible sexual involvements by victim where her
possible bias and motive to concoct sexual assault charge were developed by
evidence of desire not to move to new city and anger based on physical abuse of
mother and victim by defendant).  We
overrule Appellant=s first and second points.

IV.    Legal and factual
sufficiency of evidence

Appellant argues in his third and fourth points
that the evidence was legally and factually insufficient to prove the sexual
assaults, specifically arguing that K.W.=s
testimony was Aambiguous@ and
lacked credibility.








A.     Standards
of review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s determination
is clearly wrong and manifestly unjust or whether conflicting evidence so
greatly outweighs the evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414B15, 417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Lancon, 253 S.W.3d at 704; Watson, 204
S.W.3d at 414B15, 417.  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence. 
Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15,
417.  We may not simply substitute our
judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003); see Laster v. State, 275 S.W.3d 512, 517B18 (Tex.
Crim. App. 2009).

B.     Applicable
law








Under Texas Penal Code section 22.021(a), a
person commits the offense of aggravated sexual assault if he intentionally or
knowingly (i) causes the penetration of the anus or sexual organ of a child by
any means; (ii) causes the penetration of the mouth of a child by the sexual
organ of the actor; (iii) causes the sexual organ of a child to contact or
penetrate the mouth, anus, or sexual organ of another person, including the
actor; (iv) causes the anus of a child to contact the mouth, anus, or sexual
organ of another person, including the actor; or (v) causes the mouth of a
child to contact the anus or sexual organ of another person, including the
actor; and if the victim is younger than fourteen years of age.  Tex. Penal Code Ann. '' 22.021(a)(1)(B),
(2)(B) (Vernon Supp. 2008).

C.     Analysis








It was undisputed that K.W. was thirteen years
old at the times of the alleged offenses. 
The jury heard extensive evidence from K.W. regarding four specific
instances when she and Appellant engaged in sexual intercourse, including
vaginal, oral, and anal intercourse.  The
jury also heard about the initial fondling that occurred when K.W. and Appellant
first started to see one another as well as oral sex performed by both
individuals.  Beyond the descriptions of
the sexual behavior, K.W. was also able to testify in detail about the
locations of each incident of sexual intercourse and fondling; she described
the maroon car, the black truck, the motel, the elementary school, and the
yellow house with the chain-link fence and dogs.  The trial court admitted into evidence
photographs taken by police of the maroon car and of the yellow house and dogs,
which confirmed K.W.=s descriptions.

K.W. was also able to describe Appellant=s
tattoos located on the backside of both his arms, and the jury received photos
of the tattoos.  The jury heard testimony
by the CARE team member who had conducted a sexual assault examination and had
observed a transection on K.W.=s
hymen.  The jury received exhibits
showing a note allegedly left by Appellant for K.W. and a crumpled photo of
Appellant that K.W. had in her possession. 
The jury also heard taped phone call messages from Appellant left on
K.W.=s
voicemail as well as the recorded conversation between them in which Appellant
told K.W. to hide his picture or she would not see him again for several years.








Considering K.W.=s highly
detailed testimony, the consistent results of the CARE team exam, and the
corroborating photographs and recorded conversations, we hold that a rational
jury could have concluded beyond a reasonable doubt that Appellant
intentionally or knowingly penetrated K.W.=s female
sexual organ with his penis or caused K.W.=s female
sexual organ to contact his sexual organ; caused K.W.=s female
sexual organ to contact his mouth, penetrated K.W.=s anus
with his penis or caused her anus to contact his sexual organ; caused her mouth
to contact his sexual organ; and knew that K.W. was younger than fourteen years
of age at the time.  Viewing the evidence
in the light most favorable to the prosecution, we hold the evidence was
legally sufficient to support the jury=s
verdict.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  We therefore overrule Appellant=s third
point.

Viewing all the evidence in a neutral light, we
consider that K.W. initially denied to the police, the CPS investigator, and
her grandmother that any sexual activity took place with Appellant.  We consider Appellant=s sister=s
testimony that K.W. had told Appellant=s
girlfriend she was forced to say that she had intercourse with Appellant in
order to remain at her grandmother=s home
and that Ait never happened.@  We also consider that K.W. admitted under
cross-examination that her testimony regarding Appellant=s use of
a vibrator to penetrate her sexual organ was not part of her statements to
police and to CPS or her outcry to her family. 
But K.W.=s credibility and the weight of
her testimony were matters for the jury to resolve.  Viewed in a neutral light, we cannot say that
the evidence was so weak that the verdict was clearly wrong and manifestly
unjust or that the conflicting evidence so greatly outweighed the evidence
supporting the conviction that the jury=s
determination was manifestly unjust; thus, the evidence if factually sufficient
to support the jury=s verdict.  See Lancon 253 S.W.3d at 704; Watson,
204 S.W.3d at 417.  We therefore overrule
Appellant=s fourth point.








V.     Conclusion

Having overruled all four of Appellant=s
points, we affirm the trial court=s
judgments. 

PER
CURIAM

 

PANEL: GARDNER,
LIVINGSTON, and DAUPHINOT, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 14, 2009











[1]See Tex. R. App. P. 47.4.





[2]The trial court stated on
the record, at the time Appellant raised his objection and again at the end of
the trial, that it had all of the State=s witnesses seated before the jury was brought
in, with the exception of Crystal Utley.





[3]Because Appellant has not
argued that the protections in the Texas Constitution exceed or differ from the
protections in the United States Constitution, we only address Appellant=s arguments under the
United States Constitution.  See
Arnold v. State, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993), cert. denied,
513 U.S. 830, 115 S. Ct. 103 (1994).





[4]APast sexual behavior@ has been interpreted to
include sexual behavior that occurs Abefore trial@ but after the alleged offense.  Cuyler v. State, 841 S.W.2d 933, 936
(Tex. App.CAustin 1992, no
pet.).  Rule 412 governs the admission of
all evidence of extraneous sexual behavior of the complaining witness,
including sexual behavior that occurred after the alleged offense.  Id. 
One of the main policy reasons for rule 412 is to prevent abusive,
embarrassing, and irrelevant inquiries into sexual assault victims= lives.  Id.





[5]The Sixth Amendment
protects four aspects of confrontation: 
(1) physical presence; (2) oath; (3) cross-examination; and (4)
observation of demeanor by the trier of fact. 
Romero, 173 S.W.3d at 505 (citing Maryland v. Craig, 497
U.S. 836, 845B50, 110 S. Ct. 3157, 3164B65 (1990) (finding
sufficient assurance of reliability in a procedure allowing a child witness to
testify by closed-circuit television that denied one elementCphysical presenceCwhen the other three were
unimpaired)).  Absent any argument by
Appellant otherwise, we will assume that his contention here is that the fourth
elementCobservation of demeanorCwas implicated by the
procedure followed in this case.