Israel G. ROMERO, Appellant

v.

The STATE of Texas.

No. PD–0911–04.

Court of Criminal Appeals of Texas.

Oct. 5, 2005.

On State's Petition for Discretionary Review from the Sixth Court of Appeals, Harris [1] County.

Ken J. McLean, Houston, TX, for Appellant.

Donald W. Rogers, Jr., Houston, Matthew Paul, State's Atty., Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY and COCHRAN, JJ., joined.

The question before us is whether the defendant's Sixth Amendment right to confront witnesses was violated when a witness testified in disguise. Although this is a very close issue, and one undecided by the United States Supreme Court, we answer that question "yes" and affirm the judgment of the Court of Appeals.

## I. BACKGROUND

Appellant was indicted for aggravated assault.[2] On the morning of trial, Cesar Hiran Vasquez, one of the State's key witnesses, arrived at the courthouse but refused to enter the courtroom to testify. Vasquez, who had been subpoenaed by the State, notified the State that he "would rather go to jail than testify in this case" because of his fear of appellant.[3] The State informed the trial court of Vasquez's fear and his refusal to testify, and the trial court responded by threatening to fine Vasquez $500 for failing to obey the State's subpoena.[4] Vasquez persisted in his refusal to testify, however, stating that, because he was "worried for [him]self and [his] children," he "would prefer to pay" the fine rather than testify. The trial court then imposed the fine. Shortly thereafter, Vasquez entered the courtroom wearing dark sunglasses, a baseball cap pulled down over his forehead, and a long-sleeved jacket with its collar turned up and fastened so as to obscure Vasquez's mouth, jaw, and the lower half of his nose. The net effect and apparent purpose of Vasquez's "disguise" was to hide almost all of his face from view.[5] The record reflects that, at the time of trial, appellant was aware of Vasquez's name and address.

Appellant objected to the "disguise" on the basis of his "right to confrontation" and, more generally, his "right to a fair trial." The trial court overruled these objections.

The State then called Vasquez to the stand, outside the presence of the jury, to testify regarding appellant's motion to suppress Vasquez's in-court identification of appellant. Vasquez testified that he was operating a taxicab on May 10, 2002, at approximately 1:45 a.m., outside the Cosmos nightclub in Houston, when he saw appellant run toward the nightclub and, for no apparent reason, fire several shots in that direction. Given Vasquez's proximity to the nightclub's entrance, appellant's shots came fairly close to him. A security guard at the nightclub returned fire and

---

1. The record reflects that the Texas Supreme Court transferred this case from the First Court of Appeals to the Sixth Court of Appeals. *See* TEX. GOV'T CODE § 73.001.

2. TEX. PEN.CODE § 22.02(a)(2).

3. The record reflects that Vasquez spoke little English and that all of his communications were through an interpreter.

4. *See* TEX.CODE CRIM. PROC., ART. 24.05.

5. Our description of Vasquez's appearance is consistent with Defendant's Exhibit "A," a Polaroid photograph, included in the case record, that purports to show Vasquez on the witness stand in disguise. Although the trial court never actually admitted the photograph into evidence, the State, during oral argument in this Court, implicitly conceded the accuracy of the photograph.

hit appellant in the back. Appellant then retreated to a pickup truck and sped away, stopping once to fire again in the direction of the nightclub. Vasquez's testimony continued:

Q: [DEFENSE COUNSEL] If the Court were to order you not to wear your sunglasses, your hat, [and] your jacket with my client present in the courtroom, are you still going to testify.

* * *

A: For my safety, I wouldn't do it.

* * *

Q: [PROSECUTOR] Why are you afraid to testify against this defendant?

A: Because of the way that it could be seen that he was going to attack the security guard. It can be seen that he's a person who's dangerous on the street.

Q: And does it worry you or concern you if he was able to see your face?

A: Yes.

Q: What are you afraid that he would do?

A: To take revenge.

[PROSECUTOR]: I have no further questions.

Q: [DEFENSE COUNSEL] Well, my client's never threatened you, has he?

A: No.

Q: All right. He's given you no reason to be afraid of him, right?

A: Didn't you see the way he's looking at me?

* * *

Q: You're just afraid, right?

A: For my safety.

* * *

Q: You just don't like the way he's looking at you, right, basically?

A: No.

Q: Then what is it?

A: The way I saw him attack with the gun.

At the conclusion of Vasquez's testimony, appellant again objected to the disguise, and the trial court again overruled the objection. Vasquez later testified before the jury wearing his disguise. The jury found appellant guilty and assessed punishment at imprisonment for ten years.

On direct appeal, appellant brought three points of error. In his first two points, appellant complained that the trial court erred in permitting Vasquez to testify in his disguise. In point of error number one, appellant argued that the trial court's ruling denied him his Sixth Amendment right to confrontation "[b]ecause [Vasquez's] ball cap, large opaque sunglasses and mask [sic] prevented a face-to-face confrontation [and hindered] the jury's ability to observe [Vasquez's] demeanor and assess his credibility." In point of error number two, appellant argued that the trial court's ruling denied him his Fourteenth Amendment right to the presumption of innocence because Vasquez's "use of a disguise ... could only have lead [sic] the jury to believe the defendant was guilty, dangerous and prone to vengeance." The court of appeals sustained appellant's first two points of error, reversed the judgment of the trial court, and remanded the case to the trial court for further proceedings.[6]

The State filed a petition for discretionary review, arguing, among other things, that Vasquez's act of testifying in disguise did not violate appellant's Sixth Amend-

6. *Romero v. State,* 136 S.W.3d 680, 691 (Tex. App.-Texarkana 2004).

ment right to confront witnesses. Having granted review, we now turn to that issue.

## II. Analysis

 The Sixth Amendment's Confrontation Clause[7] reflects a strong preference for face-to-face confrontation at trial.[8] An encroachment upon face-to-face confrontation is permitted only when necessary to further an important public interest and when the reliability of the testimony is otherwise assured.[9]

### A. Reliability

██ Whether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact.[10] In *Maryland v. Craig*, the Supreme Court found sufficient assurance of reliability in a procedure that denied one of these elements—physical presence—where the remaining three elements were unimpaired.[11] In that case, a child witness testified in front of a one-way closed-circuit monitor that prevented her from seeing the defendant but permitted the judge, jury, and defendant to see the witness.[12] Because the witness was under oath, subject to contemporaneous cross-examination, and her demeanor was on display before the trier of fact, the Supreme Court found that the procedure adequately ensured that the testimony was "both reliable and subject to rigorous adversarial

testing in a manner functionally equivalent to that accorded live, in person testimony."[13]

In this case, as with *Craig*, the presence element of confrontation was compromised. Although the physical presence element might appear, on a superficial level, to have been satisfied by Vasquez's taking the witness stand, it is clear that Vasquez believed the disguise would confer a degree of anonymity that would insulate him from the defendant. The physical presence element entails an accountability of the witness to the defendant. The Supreme Court has observed that the presence requirement is motivated by the idea that a witness cannot "hide behind the shadow" but will be compelled to "look [the defendant] in the eye" while giving accusatory testimony.[14] In the present case, accountability was compromised because the witness was permitted to hide behind his disguise.

But unlike *Craig*, the present case also involves a failure to respect a *second* element of confrontation: observation of the witness's demeanor. Although Vasquez's tone of voice was subject to evaluation and some body language might have been observable, the trier of fact was deprived of the ability to observe his eyes and his facial expressions. And while wearing a disguise may itself be an aspect of demeanor that jurors could consider in assessing credibility, that fact cannot by any stretch of the imagination be considered an adequate substitute for the jurors' abili-

---

7. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const., Amend. VI.

8. *Maryland v. Craig*, 497 U.S. 836, 845–850, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

9. *Id.* at 850, 110 S.Ct. 3157.

10. *Id.* at 846, 110 S.Ct. 3157.

11. *Id.* at 851, 110 S.Ct. 3157.

12. *Id.*

13. *Id.*

14. *Coy v. Iowa*, 487 U.S. 1012, 1018, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

ty to view a witness's face, the most expressive part of the body and something that is traditionally regarded as one of the most important factors in assessing credibility. To hold otherwise is to remove the "face" from "face-to-face confrontation."

### B. Important interests

While there may be circumstances sufficient to justify a procedure that overrides not just one but *two* elements of a defendant's right to confrontation, those circumstances should rise above the "important" interests referred to in *Craig* to interests that are truly compelling. But we do not see an important interest served in the present case, much less a compelling one.

One important, even compelling, interest might be to protect a witness from retaliation, but the disguise in this case did little to further such an interest because Vasquez's name and address, but not his face, were already known to the defendant.[15] Although Vasquez might reasonably fear that the defendant would be able to connect his facial features and appearance to his name and address, this connection could easily be made without any in-court appearance. A defendant seeking retaliation could simply knock on the door at the known address and ask for the named person. Moreover, this is not a case in which the defendant gave the victim or the authorities any concrete reason for suspecting retaliation, nor is this a case in which the defendant was shown to belong to a crime syndicate or a street gang from which retaliation might be anticipated.

At best, the disguise worked to allay the witness's subjective fear of retaliation. But some degree of trauma is to be expected in face-to-face confrontations.[16] Calming an *adult* witness's fears is quite a different thing from protecting a child victim from serious emotional trauma. Adults are generally considered to be made of sterner stuff and capable of looking after their own psychological well-being. And the difference is especially great when the adult witness is not the victim, but merely a bystander who observed events, and when the basis of the witness's fear is simply that the defendant committed a violent crime and gave the witness a bad look. If those circumstances are sufficient to justify infringing on a defendant's right to face-to-face confrontation, then such infringement can be carried out against anyone accused of a violent crime. That outcome would violate the principle that face-to-face confrontation may be deprived only in exceptional situations.[17]

### C. Harm

■ In ground four, the State contends that any error was harmless. Citing *Morales v. Artuz*,[18] it argues that sunglasses only minimally impair a jury's ability to assess witness credibility; that the testimony of the witness was cumulative; and that the presumption-of-innocence jury charge cured or minimized any harm. But aside from the fact that the disguise consisted of far more than sunglasses, the State's first argument is really directed

---

15. *See Craig,* 497 U.S. at 856, 110 S.Ct. 3157 (there must be a causal connection between the defendant's presence and the trauma the State seeks to prevent).

16. *Coy,* 487 U.S. at 1020, 108 S.Ct. 2798 ("face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child

coached by a malevolent adult. It is a truism that constitutional protections have costs").

17. *Id.* at 850, 110 S.Ct. 3157 ("That the face-to-face confrontation requirement is not absolute does not, of course, mean that it may be easily dispensed with").

18. 281 F.3d 55 (2nd Cir.2002),

toward error, i.e., whether his confrontation rights were in fact violated. And, as to the second argument, though the complainant also gave eyewitness testimony, he had shot the appellant and thus had a possible interest in the appellant being the perpetrator. Under these circumstances, we cannot say that the testimony was cumulative and thus harmless. And finally, the State's harmlessness argument regarding the presumption-of-innocence charge relates only to grounds two and three, and is not pertinent to the confrontation issue. The State has, thus, failed to show us why the error was harmless beyond a reasonable doubt.[19]

We affirm the judgment of the Court of Appeals.

MEYERS and HOLCOMB JJ., filed a dissenting opinion.

MEYERS, J., filed a dissenting opinion.

Mr. Israel G. Romero, this is your lucky day. You're going to get a new trial. The trial judge erred by allowing an eye witness to your crime to wear a ball cap, jacket, and sunglasses while testifying. And, even more amazing is that this type of error is immune from a harm analysis.[1]

The majority says that two elements of the confrontation clause [2] were compro-

mised—that being presence and demeanor. While I'm unsure what *compromise* means here, I'm fairly confident that the witness was there face-to-face to testify, was cross-examined, and that his demeanor showed that he was scared to death of the defendant. In Texas, is an accused entitled to more than this? Apparently so. Since Mr. Vasquez spoke through an interpreter, I really think this whole controversy is probably "lost in translation."

In *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court discussed the purpose of the Confrontation Clause.

> The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. The word "confront," after all, also means a clashing of forces or ideas, thus carrying with it the notion of adversariness. As we noted in our earliest case interpreting the Clause:
>
> "The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-exami-

---

**19.** In two other grounds, the State contends that appellant failed to preserve his presumption-of-innocence argument for review (ground two), and that Vasquez's act of testifying in disguise did not unduly compromise appellant's presumption of innocence (ground three). Due to our disposition of grounds one and four, we have no occasion to consider grounds two and three. Consequently, they are dismissed.

**1.** The court of appeals stated the following as to their harm analysis: "Although it is impossible for this Court to determine the likely damage caused by Vasquez's testifying in disguise or the weight individual jurors may have attributed to his appearance, it posed an

unacceptable threat to Romero's right to a fair trial." *Romero v. State,* 136 S.W.3d 680 (Tex.App.-Texarkana 2004). Apparently "threats" to a fair trial can now make an error harmful beyond a reasonable doubt. *See* Texas Rule of Appellate Procedure 44.2(a).

**2.** The Appellant cites *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), stating that "the Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination."

nation of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox [v. United States]* 156 U.S. [237] at 242–243, 15 S.Ct. 337, 39 L.Ed. 409.

As this description indicates, the right guaranteed by the Confrontation Clause includes not only a "personal examination," 156 U.S. at 242, [15 S.Ct. 337] but also "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *[California v.] Green*, [399 U.S. 149] at 158[, 90 S.Ct. 1930].

The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings.

*Craig*, 497 U.S. at 845–46, 110 S.Ct. 3157.

But here's the catch, the defense basically neutralized the witness's disguise. Mr. Vasquez was the only one in the courtroom who thought he was *The Phantom of the Opera*. The only effect that wearing a hat and sunglasses had was to make Mr. Vasquez more comfortable on the stand and to limit the trauma he felt when testifying against someone whom he feared. This is similar to the cases cited by the parties, *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), and *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666, in which measures were used to prevent face-to-face contact between the defendant and the witness in order to prevent trauma to the victims. However, unlike the screen in *Coy* and the closed circuit television in *Craig*, in this case, the outfit worn by Mr. Vasquez did not prevent or encroach upon face-to-face contact between the defendant and the witness.

Attorneys often change the appearance of witnesses appearing in court. Drunks are sobered up, addicts are cleaned up, and the homeless are dressed up; prostitutes even appear in business suits. These modifications are intended to persuade the jury that the witness is reliable. Mr. Vasquez's additions were not intended to fool the jury. Rather it was simply a method to allay his fears about testifying. Nothing was compromised-just slightly camouflaged.

I agree with the trial court's decision to allow the witness to appear as *secret agent man*. Therefore, I respectfully dissent.

HOLCOMB, J., filed a dissenting opinion.

I respectfully dissent. On the record before us, I discern no violation of appellant's Sixth Amendment right to confront the witnesses against him. Accordingly, I would reverse the judgment of the court of appeals.

The central concern of the Sixth Amendment's Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rig-

orous testing in an adversarial proceeding before the trier of fact. *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1992). In accord with that central concern, "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial." *Id.* at 849 (emphasis in original). In the absence of an actual face-to-face confrontation, a defendant's right to confront accusatory witnesses may be satisfied if (1) denial of such confrontation is necessary to further an important state interest and (2) the reliability of the testimony is otherwise assured. *Id.* at 850.

After considering the record and the arguments of the parties, I conclude that an important state interest is implicated in this case. On this record, the trial court could have reasonably concluded that Vasquez's disguise was necessary to further the important state interest in protecting the physical well-being of witnesses who have a well-founded fear of retaliation on the part of the defendant. Vasquez testified that he witnessed appellant engage in an unprovoked, determined, and lethal attack on a nightclub in Houston. Vasquez also testified that he was afraid to testify against appellant because of what he had seen appellant do. Finally, Vasquez remarked, during his testimony, about how appellant was looking at him in the courtroom, apparently in a threatening manner. On this record, the trial court could have reasonably concluded that Vasquez reasonably believed appellant was a dangerous person, possibly a sociopath, and that Vasquez had a well-founded fear of retaliation on appellant's part. The fact that the trial court made no such finding on the record is not determinative. "Nothing in *Maryland v. Craig* requires that a trial court make explicit, as opposed to implicit, findings regarding the necessity of a special procedure to protect a . . . witness." *Lively v. State,* 968 S.W.2d 363, 367 (Tex.Crim. App.1998).

I also conclude that the trial court could have reasonably concluded that Vasquez's disguise was necessary to further the important state interest in presenting key evidence to establish guilt in a felony case. The record reflects that Vasquez was a key witness in the State's prosecution of appellant for a very serious felony offense. The record further reflects that Vasquez absolutely refused to testify unless he was allowed to wear his disguise.

Finally, I conclude that the reliability of Vasquez's testimony was otherwise assured, because (1) both parties were aware of his name and residence address, *i.e.,* he was not an anonymous witness; (2) he testified in the courtroom and under oath, thus impressing him with the seriousness of the matter and the possibility of a penalty for perjury; (3) he was able to see appellant's face in the courtroom, thus reducing the risk that he would wrongfully implicate an innocent person; (4) he was subject to cross-examination; and (5) the jury was able to hear his voice and observe his overall demeanor.

Undoubtedly, the Sixth Amendment does not always require that the jurors have the ability to see the witness' eyes or see his mouth move as he talks. In some situations, for example, a witness may be blind and may wear sunglasses over his sightless eyes; in other situations, a witness may testify in sign language.

In my view, the Sixth Amendment was satisfied in this case. Accordingly, I respectfully dissent.