COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-172-CR

 

WALLACE JUDKINS                                                                          APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

                FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------








A
jury convicted Appellant Wallace Judkins of
aggravated kidnapping, enhanced by two prior felony convictions.  The jury assessed his punishment at life
imprisonment.  The trial court sentenced
him accordingly.  In four issues,
Appellant contends that the trial court erred by admitting deposition testimony
at trial, that he received ineffective assistance of counsel at trial, and that
the trial court erred by not allowing evidence regarding his claim of
ineffective assistance to be presented at the hearing on his motion for new
trial.  Because we hold that the trial
court abused its discretion by admitting deposition testimony of a witness
unavailable at trial when Appellant was prevented from being present at the
deposition, we reverse the trial court=s
judgment and remand this case to the trial court for a new trial.

After
allegedly burglarizing Robert Denning=s
home and shooting at him,[2]
Appellant began walking down the driveway. 
At the end of the driveway, Appellant was passed by Deputy Billy Wilson,
who was driving southbound.  Appellant
flagged down a blue Volkswagen driven by Richard Pratt heading northbound.  Appellant got in the vehicle on the passenger
side.  Denning, who was on the phone with
911, followed the Volkswagen in his pickup until passed by another deputy.  On the 911 tape, Denning can be heard to say,
APlease,
don=t
pull a gun on him@; AThe guy=s
armed, and he just flagged down a car. 
Jesus, don=t pull a gun on him after
you get in there@; APlease,
he=s gonna carjack >em@;
and AI=ve gotta keep these people in sight because somebody=s gonna get hurt.@

Upon
hearing a call about a person with a gun in the area that he had just passed,
Deputy Wilson called in a description of the vehicle that he had passed and
turned his car around to head northbound. 
Deputy Tom Hutson had been dispatched in
response to Denning=s call about the burglary,
and on the way to that crime scene, Deputy Hutson
heard over the radio that a blue Volkswagen was involved.  He saw the Volkswagen in front of him.  Two white males were inside in it.  The driver looked straight ahead; the
passenger looked over his shoulder and continuously watched Deputy Hutson as he drove behind the Volkswagen.

The
jurors also heard conversations between the 911 operator and police officers
referring to Appellant=s having flagged down the
Volkswagen, a possible carjacking, and a possible hostage in the car.

After
two other officers arrived as backup, Deputy Hutson
turned on his lights to initiate a traffic stop.  The Volkswagen did not stop, and a chase
ensued.[3]  The chase led to a trailer park where
Appellant=s
mother lived.  The Volkswagen drove
straight at an officer, Sergeant Paul Keith, and Keith believed that the car
was going to hit him. He dropped spikes and drew his
weapon.  After the Volkswagen turned
sharply and stalled out against a tree, Appellant exited the passenger=s
side of the car, fell or was pushed onto the ground, and was handcuffed by
Deputy Johnny Peters.

Appellant
told the police officers who captured him that the Volkswagen=s
driver, Pratt, had forced him to get into his car and kidnapped him and that
Pratt had a gun.  The officers did indeed
find a gun in the Volkswagen, and Pratt admitted that it had been in his
lap.  Pratt told Deputy Wilson that he
had been diagnosed with cancer and was on his way back from treatment when
Appellant flagged him down.

Pratt
did not testify at trial.  Instead, the
State offered his deposition testimony over Appellant=s
timely objection to the denial of the right of confrontation.  The visiting trial judge overruled Appellant=s
objection, granted his running objection, and admitted the deposition
testimony.

The
deposition had been conducted because Pratt had stage 4 cancer
and was going into hospice care.  When
the deposition was scheduled, Appellant was in the Denton County Jail.  The State fully anticipated that Appellant
would be present for the deposition.  On
the day before the deposition, Appellant was still physically present in the
Denton County Jail.  Because federal
authorities had expressed an interest in Appellant, the prosecutor had even
spoken with the federal investigators and the federal prosecutor, who assured
the state prosecutor that the federal authorities had no intention of taking
Appellant out of the Denton County Jail. 
But in the middle of the night before the deposition, federal
authorities took Appellant from the jail.

Rather
than postponing the deposition until Appellant could be present, the State
asked the trial court to allow the deposition because of their concern that
Pratt might not survive until Appellant was returned to Denton County.  Appellant=s
counsel objected to Appellant=s
inability to be present at the deposition and to the constitutional denial of
Appellant=s
confrontation right and right to cross-examine witnesses.  Because of Pratt=s
illness, the trial court overruled the objections and allowed the deposition to
go forward over Appellant=s counsel=s
running objection.  The deposition was
conducted in the courtroom in the presence of the trial judge with the
prosecutors and Appellant=s trial counsel
present.  Appellant was in federal
custody in Oklahoma at the time of the deposition.  The record reflects no attempt to set up
closed circuit television with telephone communication between Appellant and
his attorney and no effort to ensure any other means of facilitating Appellant=s
confrontation of Pratt and Appellant=s
communication with defense counsel.

Ten
days before trial, the prosecutor spoke with Pratt, who was concerned about
whether he could physically come to court but nevertheless wanted to come
testify.  When the State offered Pratt=s
deposition at trial, Pratt was still alive. 
Pratt=s
wife had told the prosecutor, however, that Pratt was Aincapacitated
to the degree where he could not get out of bed and could not talk.@

In
his second issue, Appellant contends that the trial court abused its discretion
by admitting the deposition testimony in violation of his confrontation
rights.  The Supreme Court of the United
States has thoroughly analyzed the history and the purpose of an accused person=s
right to confront and cross-examine his accusers.  The Court cites 

Fenwick=s Case, 13 How. St. Tr. 537, 591B592 (H.C. 1696) (Powys) (A[T]hat which they
would offer is something that Mr. Goodman hath sworn when he was examined . . .
; sir J.F. not being present or privy, and no
opportunity given to cross‑examine the person;
and I conceive that cannot be offered as evidence . . . A); id., at 592
(Shower) (A[N]o deposition of a
person can be read, though beyond sea, unless in cases where the party it is to
be read against was privy to the examination, and might have cross‑examined him . . . .  [O]ur
constitution is, that the person shall see his accuser@).[4]

 








 

The
right of confrontation is a personal due process right dating back to the trial
of Saint Paul the Apostle in the Roman courts. 
The Roman Governor Porcius Festus, in
discussing the proper treatment of St. Paul, stated, AIt
is not the manner of the Romans to deliver any man to die before that he which
is accused have the accusers face to face, and have license to answer for
himself concerning the crime laid against him.@[5]

The
State argues that the right to confrontation is not a right personal to a
defendant but may be satisfied by the defendant=s
attorney being present although the defendant is involuntarily absent.  The State uses as an example the law allowing
a child witness to testify outside the presence of a defendant by means of
closed circuit television.[6]  But that law allows the child to testify
outside the presence of the jury only when the defendant is allowed to consult
with his counsel during the questioning of the child.[7]  As the Texas Court of Criminal Appeals has
explained, 

Whether
the reliability of the testimony is otherwise assured turns upon the extent to
which the proceedings respect the four elements of confrontation:  physical presence, oath, cross‑examination,
and observation of demeanor by the trier of
fact.  In Maryland v. Craig, the
Supreme Court found sufficient assurance of reliability in a procedure that denied
one of these elementsCphysical presenceCwhere the remaining
three elements were unimpaired.  In that
case, a child witness testified in front of a one‑way
closed‑circuit monitor that prevented her from
seeing the defendant but permitted the judge, jury, and defendant to see the
witness.  Because the witness was under
oath, subject to contemporaneous cross‑examination,
and her demeanor was on display before the trier of
fact, the Supreme Court found that the procedure adequately ensured that the
testimony was Aboth reliable and
subject to rigorous adversarial testing in a manner functionally equivalent to
that accorded live, in person testimony.@[8]

 

Even
if such testimony by closed-circuit television were permissible here, Appellant
was denied the protections that saved the procedure in Romero:  Appellant was not present to see the witness,
and Pratt was not subject to contemporaneous cross-examination in which
Appellant could participate to aid his counsel.

An
important aspect of the right of confrontation and cross-examination is
ensuring the integrity of the fact-finding process.[9]  As the Gray court pointed out, 

By Aintegrity,@ we do not merely mean the perception of a
fair trial, but also the tactical assistance [the accused] could have offered
his attorney while he questioned [the accuser] about her testimony.  Although [the accused] had the opportunity to
consult with his attorney after the court removed him from the courtroom and
before the start of [the accuser=s] cross-examination, [the accused] was not
present during the actual cross-examination and therefore could not assist his
attorney in following-up to any answers [the accuser] provided on
cross-examination.  [Illinois v. Allen,
397 U.S. 337, 344, 90 S. Ct. 1057, 1061 (1970)] (noting
that Aone of the defendant=s primary advantages
to being present at the trial [is] his ability to communicate with his counsel@).[10]

 








 

Appellant
suffered the same fate as Gray, who had been removed from the courtroom.  Appellant was not present to confront his
accuser, and he was not able to communicate with his lawyer during the only
testimony Pratt gave.

When
Pratt was finally seized, he was in possession of a firearm.  Only Pratt could testify to the elements of
kidnapping.  Only Pratt could testify
that the firearm was not his, but, rather, had been placed under his legs by
Appellant.  Only Pratt could testify that
he did not voluntarily drive Appellant anywhere.  Although the jury heard Denning=s
speculation on the 911 tape, it was only speculation.  Only Pratt, the complainant, could testify for
the State about what actually happened between Pratt and Appellant.  Consequently, we hold that the trial court
abused its discretion in admitting Pratt=s
deposition testimony over Appellant=s
timely objection.

We
also hold that the error is constitutional. 
In violation of the due process guaranteed to every person charged with
a criminal offense by the Sixth Amendment requirement of confrontation and
cross-examination of the accuser in a criminal trial,[11]
 Appellant was prevented by State action
from attending Pratt=s deposition and denied any
opportunity either to confront Pratt as he testified or to provide any
assistance to defense counsel during the deposition.[12]  Consequently, Appellant could not observe
Pratt=s
demeanor as he testified, could not assist defense counsel during the State=s
direct examination of Pratt by pointing out any inaccuracies or inconsistencies
in his testimony, and could not participate in any way, much less any
meaningful way, in any cross-examination of Pratt, the sole complainant in the
kidnapping offense.

Because
we hold that the trial court abused its discretion by admitting the deposition
testimony at trial after allowing the deposition to go forward in Appellant=s
absence, violating his constitutional right to confront and cross-examine
Pratt, we apply rule 44.2(a) and reverse the trial court=s
judgment unless we determine beyond a reasonable doubt that the error did not
contribute to Appellant=s conviction or punishment.[13]

The
State argues that any error in admitting the videotaped deposition of Pratt was
harmless, relying on Heugatter,[14]
because other evidence, including Denning=s
statements recorded on the 911 tape that he feared that Appellant would flag
somebody down or carjack someone and the 911 tapes of the officers=
conversations, overwhelmingly demonstrated Appellant=s
guilt and because the deposition testimony did not materially affect the jury=s
deliberations.  But the evidence
excluding the deposition testimony also shows that Pratt had a firearm in his
lap when the State claimed that Appellant kidnapped Pratt, that Pratt was
driving the vehicle that later drove straight at the officer, and that the
officer believed the car was going to hit him. 
While Denning speculated on the 911 tape that Appellant might flag down
an innocent stranger, his statements were only speculation.  Only Pratt testified to the elements of
kidnapping, explaining why he stopped for Appellant, how Appellant managed to
get into the car, whether Pratt consented to going with Appellant, whether
Pratt was in fear or felt threatened, and how Pratt ended up with a firearm in
his possession.

As
the Gray court candidly explained,

While
we can understand that the presence of an accused may make a witness feel
nervous or even threatened, particularly if the witness is a victim to the
crime, the principles embodied in the Sixth Amendment are not meant to protect
the rights of witnesses, but rather those of the accused, whose life and
liberty lies in the hands of his peers.[15]

 

Because
the only two witnesses to the events in the car were Appellant and Pratt, we
cannot say beyond a reasonable doubt that the admission of the deposition of
Pratt, taken at a time when Appellant had no access to his attorney, did not
contribute to Appellant=s conviction and punishment.[16]  We therefore sustain Appellant=s
second issue.  Because of our disposition
of this issue,  we
do not reach his remaining issues.[17]

Having
sustained Appellant=s second issue, which is
dispositive, we reverse the trial court=s
judgment and remand this case for a new trial.








 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

 

MEIER,
J. dissents without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 26, 2010











[1]See Tex. R. App. P. 47.4.





[2]Appellant=s appeals from his
convictions for attempted capital murder and evading arrest are pending.  See Judkins v.
State, Nos. 02-09-00173-CR, 02-09-00174-CR (Tex. App.CFort Worth filed June
1, 2009).





[3]See id.





[4]Crawford
v. Washington,
541 U.S. 36, 45B46, 124 S. Ct. 1354,
1361 (2004).





[5]Gray v. Moore, 520 F.3d 616, 626 n.3 (6th Cir.), cert.
denied, 129 S. Ct. 216 (2008).





[6]See Tex. Code Crim.
Proc. Ann. art.
38.071 (Vernon Supp. 2009).





[7]See id. art.
38.071, ' 3(a).





[8]Romero
v. State,
173 S.W.3d 502, 505 (Tex. Crim. App. 2005) (footnotes
omitted).





[9]Kentucky
v. Stincer, 482 U.S. 730, 736, 107 S. Ct. 2658, 2662
(1987).





[10]Gray, 520 F.3d at 627 (selected citation omitted).





[11]See U.S. Const. amend. VI.





[12]See Crawford, 541 U.S. at 68, 124
S. Ct. at 1374.





[13]See Tex. R. App. P.
44.2(a).





[14]Heugatter v. State, No. 03-06-00127-CR,
2007 WL 2462014, at *4B5 (Tex. App.CAustin Aug. 30, 2007,
no pet.) (mem. op., not
designated for publication).





[15]Gray, 520
F.3d at 627.





[16]See Tex. R. App. P.
44.2(a).





[17]See Tex. R. App. P. 47.1.