

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-172-CR

WALLACE JUDKINS                                      APPELLANT

V.

THE STATE OF TEXAS                                  STATE

------------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Wallace Judkins of aggravated kidnapping, enhanced by two prior felony convictions. The jury assessed his punishment at life imprisonment. The trial court sentenced him accordingly. In four issues, Appellant contends that the trial court erred by admitting deposition testimony at trial, that he received ineffective assistance of counsel at trial, and that the trial court erred by not allowing evidence regarding his claim of ineffective assistance to be presented at the hearing on his motion for new trial. Because we hold that the trial court abused its

---

[1] *See* Tex. R. App. P. 47.4.

discretion by admitting deposition testimony of a witness unavailable at trial when Appellant was prevented from being present at the deposition, we reverse the trial court's judgment and remand this case to the trial court for a new trial.

After allegedly burglarizing Robert Denning's home and shooting at him,[2] Appellant began walking down the driveway. At the end of the driveway, Appellant was passed by Deputy Billy Wilson, who was driving southbound. Appellant flagged down a blue Volkswagen driven by Richard Pratt heading northbound. Appellant got in the vehicle on the passenger side. Denning, who was on the phone with 911, followed the Volkswagen in his pickup until passed by another deputy. On the 911 tape, Denning can be heard to say, "Please, don't pull a gun on him"; "The guy's armed, and he just flagged down a car. Jesus, don't pull a gun on him after you get in there"; "Please, he's gonna carjack 'em"; and "I've gotta keep these people in sight because somebody's gonna get hurt."

Upon hearing a call about a person with a gun in the area that he had just passed, Deputy Wilson called in a description of the vehicle that he had passed and turned his car around to head northbound. Deputy Tom Hutson had been dispatched in response to Denning's call about the burglary, and on the way to that crime scene, Deputy Hutson heard over the radio that a blue Volkswagen was involved. He saw the Volkswagen in front of him. Two white males were inside in

---

[2] Appellant's appeals from his convictions for attempted capital murder and evading arrest are pending. *See Judkins v. State*, Nos. 02-09-00173-CR, 02-09-00174-CR (Tex. App.—Fort Worth filed June 1, 2009).

it. The driver looked straight ahead; the passenger looked over his shoulder and continuously watched Deputy Hutson as he drove behind the Volkswagen.

The jurors also heard conversations between the 911 operator and police officers referring to Appellant's having flagged down the Volkswagen, a possible carjacking, and a possible hostage in the car.

After two other officers arrived as backup, Deputy Hutson turned on his lights to initiate a traffic stop. The Volkswagen did not stop, and a chase ensued.[3] The chase led to a trailer park where Appellant's mother lived. The Volkswagen drove straight at an officer, Sergeant Paul Keith, and Keith believed that the car was going to hit him. He dropped spikes and drew his weapon. After the Volkswagen turned sharply and stalled out against a tree, Appellant exited the passenger's side of the car, fell or was pushed onto the ground, and was handcuffed by Deputy Johnny Peters.

Appellant told the police officers who captured him that the Volkswagen's driver, Pratt, had forced him to get into his car and kidnapped him and that Pratt had a gun. The officers did indeed find a gun in the Volkswagen, and Pratt admitted that it had been in his lap. Pratt told Deputy Wilson that he had been diagnosed with cancer and was on his way back from treatment when Appellant flagged him down.

Pratt did not testify at trial. Instead, the State offered his deposition testimony over Appellant's timely objection to the denial of the right of confrontation. The

---

[3] ... *See id.*

3

visiting trial judge overruled Appellant's objection, granted his running objection, and admitted the deposition testimony.

The deposition had been conducted because Pratt had stage 4 cancer and was going into hospice care. When the deposition was scheduled, Appellant was in the Denton County Jail. The State fully anticipated that Appellant would be present for the deposition. On the day before the deposition, Appellant was still physically present in the Denton County Jail. Because federal authorities had expressed an interest in Appellant, the prosecutor had even spoken with the federal investigators and the federal prosecutor, who assured the state prosecutor that the federal authorities had no intention of taking Appellant out of the Denton County Jail. But in the middle of the night before the deposition, federal authorities took Appellant from the jail.

Rather than postponing the deposition until Appellant could be present, the State asked the trial court to allow the deposition because of their concern that Pratt might not survive until Appellant was returned to Denton County. Appellant's counsel objected to Appellant's inability to be present at the deposition and to the constitutional denial of Appellant's confrontation right and right to cross-examine witnesses. Because of Pratt's illness, the trial court overruled the objections and allowed the deposition to go forward over Appellant's counsel's running objection. The deposition was conducted in the courtroom in the presence of the trial judge with the prosecutors and Appellant's trial counsel present. Appellant was in federal

4

custody in Oklahoma at the time of the deposition. The record reflects no attempt to set up closed circuit television with telephone communication between Appellant and his attorney and no effort to ensure any other means of facilitating Appellant's confrontation of Pratt and Appellant's communication with defense counsel.

Ten days before trial, the prosecutor spoke with Pratt, who was concerned about whether he could physically come to court but nevertheless wanted to come testify. When the State offered Pratt's deposition at trial, Pratt was still alive. Pratt's wife had told the prosecutor, however, that Pratt was "incapacitated to the degree where he could not get out of bed and could not talk."

In his second issue, Appellant contends that the trial court abused its discretion by admitting the deposition testimony in violation of his confrontation rights. The Supreme Court of the United States has thoroughly analyzed the history and the purpose of an accused person's right to confront and cross-examine his accusers. The Court cites

> *Fenwick's Case*, 13 How. St. Tr. 537, 591–592 (H.C. 1696) (Powys) ("[T]hat which they would offer is something that Mr. Goodman hath sworn when he was examined . . . ; sir J.F. not being present or privy, and no opportunity given to cross-examine the person; and I conceive that cannot be offered as evidence . . . "); *id.*, at 592 (Shower) ("[N]o deposition of a person can be read, though beyond sea, unless in cases where the party it is to be read against was privy to the examination, and might have cross-examined him . . . . [O]ur constitution is, that the person shall see his accuser").[4]

---

[4] *... Crawford v. Washington*, 541 U.S. 36, 45–46, 124 S. Ct. 1354, 1361 (2004).

5

The right of confrontation is a personal due process right dating back to the trial of Saint Paul the Apostle in the Roman courts. The Roman Governor Porcius Festus, in discussing the proper treatment of St. Paul, stated, "It is not the manner of the Romans to deliver any man to die before that he which is accused have the accusers face to face, and have license to answer for himself concerning the crime laid against him."[5]

The State argues that the right to confrontation is not a right personal to a defendant but may be satisfied by the defendant's attorney being present although the defendant is involuntarily absent. The State uses as an example the law allowing a child witness to testify outside the presence of a defendant by means of closed circuit television.[6] But that law allows the child to testify outside the presence of the jury only when the defendant is allowed to consult with his counsel during the questioning of the child.[7] As the Texas Court of Criminal Appeals has explained,

> Whether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact. In *Maryland v. Craig*, the Supreme Court found sufficient assurance of reliability in a procedure that denied one of these elements—physical presence—where the remaining three elements were unimpaired. In that case, a child witness testified in front of a one-way closed-circuit monitor that

---

[5] *Gray v. Moore*, 520 F.3d 616, 626 n.3 (6th Cir.), *cert. denied*, 129 S. Ct. 216 (2008).

[6] *See* Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon Supp. 2009).

[7] *See id.* art. 38.071, § 3(a).

prevented her from seeing the defendant but permitted the judge, jury, and defendant to see the witness. Because the witness was under oath, subject to contemporaneous cross-examination, and her demeanor was on display before the trier of fact, the Supreme Court found that the procedure adequately ensured that the testimony was "both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in person testimony."[8]

Even if such testimony by closed-circuit television were permissible here, Appellant was denied the protections that saved the procedure in *Romero*: Appellant was not present to see the witness, and Pratt was not subject to contemporaneous cross-examination in which Appellant could participate to aid his counsel.

An important aspect of the right of confrontation and cross-examination is ensuring the integrity of the fact-finding process.[9] As the *Gray* court pointed out,

> By "integrity," we do not merely mean the perception of a fair trial, but also the tactical assistance [the accused] could have offered his attorney while he questioned [the accuser] about her testimony. Although [the accused] had the opportunity to consult with his attorney after the court removed him from the courtroom and before the start of [the accuser's] cross-examination, [the accused] was not present during the actual cross-examination and therefore could not assist his attorney in following-up to any answers [the accuser] provided on cross-examination. *[Illinois v. Allen*, 397 U.S. 337, 344, 90 S. Ct. 1057, 1061 (1970)]* (noting that "one of the defendant's primary advantages to being present at the trial [is] his ability to communicate with his counsel").[10]

---

[8] ... *Romero v. State,* 173 S.W.3d 502, 505 (Tex. Crim. App. 2005) (footnotes omitted).

[9] ... *Kentucky v. Stincer*, 482 U.S. 730, 736, 107 S. Ct. 2658, 2662 (1987).

[10] ... *Gray*, 520 F.3d at 627 (selected citation omitted).

7

Appellant suffered the same fate as Gray, who had been removed from the courtroom. Appellant was not present to confront his accuser, and he was not able to communicate with his lawyer during the only testimony Pratt gave.

When Pratt was finally seized, he was in possession of a firearm. Only Pratt could testify to the elements of kidnapping. Only Pratt could testify that the firearm was not his, but, rather, had been placed under his legs by Appellant. Only Pratt could testify that he did not voluntarily drive Appellant anywhere. Although the jury heard Denning's speculation on the 911 tape, it was only speculation. Only Pratt, the complainant, could testify for the State about what actually happened between Pratt and Appellant. Consequently, we hold that the trial court abused its discretion in admitting Pratt's deposition testimony over Appellant's timely objection.

We also hold that the error is constitutional. In violation of the due process guaranteed to every person charged with a criminal offense by the Sixth Amendment requirement of confrontation and cross-examination of the accuser in a criminal trial,[11] Appellant was prevented by State action from attending Pratt's deposition and denied any opportunity either to confront Pratt as he testified or to provide any assistance to defense counsel during the deposition.[12] Consequently, Appellant could not observe Pratt's demeanor as he testified, could not assist defense counsel during the State's direct examination of Pratt by pointing out any inaccuracies or

---

[11] _..._ *See* U.S. Const. amend. VI.

[12] _..._ *See Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374.

8

inconsistencies in his testimony, and could not participate in any way, much less any meaningful way, in any cross-examination of Pratt, the sole complainant in the kidnapping offense.

Because we hold that the trial court abused its discretion by admitting the deposition testimony at trial after allowing the deposition to go forward in Appellant's absence, violating his constitutional right to confront and cross-examine Pratt, we apply rule 44.2(a) and reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment.[13]

The State argues that any error in admitting the videotaped deposition of Pratt was harmless, relying on *Heugatter*,[14] because other evidence, including Denning's statements recorded on the 911 tape that he feared that Appellant would flag somebody down or carjack someone and the 911 tapes of the officers' conversations, overwhelmingly demonstrated Appellant's guilt and because the deposition testimony did not materially affect the jury's deliberations. But the evidence excluding the deposition testimony also shows that Pratt had a firearm in his lap when the State claimed that Appellant kidnapped Pratt, that Pratt was driving the vehicle that later drove straight at the officer, and that the officer believed the car

---

[13]... *See* Tex. R. App. P. 44.2(a).

[14]... *Heugatter v. State*, No. 03-06-00127-CR, 2007 WL 2462014, at *4–5 (Tex. App.—Austin Aug. 30, 2007, no pet.) (mem. op., not designated for publication).

was going to hit him. While Denning speculated on the 911 tape that Appellant might flag down an innocent stranger, his statements were only speculation. Only Pratt testified to the elements of kidnapping, explaining why he stopped for Appellant, how Appellant managed to get into the car, whether Pratt consented to going with Appellant, whether Pratt was in fear or felt threatened, and how Pratt ended up with a firearm in his possession.

As the *Gray* court candidly explained,

> While we can understand that the presence of an accused may make a witness feel nervous or even threatened, particularly if the witness is a victim to the crime, the principles embodied in the Sixth Amendment are not meant to protect the rights of witnesses, but rather those of the accused, whose life and liberty lies in the hands of his peers.[15]

Because the only two witnesses to the events in the car were Appellant and Pratt, we cannot say beyond a reasonable doubt that the admission of the deposition of Pratt, taken at a time when Appellant had no access to his attorney, did not contribute to Appellant's conviction and punishment.[16] We therefore sustain Appellant's second issue. Because of our disposition of this issue, we do not reach his remaining issues.[17]

Having sustained Appellant's second issue, which is dispositive, we reverse the trial court's judgment and remand this case for a new trial.

---

[15] ... *Gray*, 520 F.3d at 627.

[16] ... *See* Tex. R. App. P. 44.2(a).

[17] ... *See* Tex. R. App. P. 47.1.

10

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

MEIER, J. dissents without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 26, 2010