

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

**NO. PD-0467-23**

---

**JEFFREY MERRITT MCCUMBER, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

---

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE NINTH COURT OF APPEALS
POLK COUNTY**

---

KEEL, J., delivered the opinion of the Court in which KELLER, P.J., and YEARY and SLAUGHTER, JJ., joined. WALKER, J., filed a dissenting opinion in which HERVEY, J., joined. RICHARDSON, NEWELL, and MCCLURE, JJ., concurred.

## O P I N I O N

A jury convicted Appellant of continuous sexual abuse of a child and sentenced him to sixty years in prison. The court of appeals reversed the conviction because the trial court overruled Appellant's Confrontation Clause objection and allowed a witness to testify via Zoom. *McCumber v. State*, 2023 Tex. App. LEXIS 4321 at *29-30 (Tex. App.—Beaumont June 21, 2023). It held that the trial court's necessity finding in

support of its ruling was too general, and the ruling was unjustified by any public-policy interest. *Id.* at \*23. We hold, however, that the trial court's necessity finding was sufficient and was justified by the witness's fear of retaliation, so we reverse the judgment of the court of appeals.

## I. Background

Appellant was the victim's mother's boyfriend. They lived together for about five years, and the victim lived with them off and on. She testified that when she was six or seven years old, Appellant touched her vagina every other night for several months and sometimes made her put her mouth on his penis. About a year after the relationship between Appellant and the mother ended, the victim panicked at the sight of Appellant while she was in a car with Alyssa Crawford. That evening, Crawford asked why she got upset, and the victim told her about Appellant's abuse. Crawford took the victim to the Polk County Sheriff's Department and reported her outcry.

Two years later, when the case came to trial, the State moved to present Crawford's testimony via Zoom. Appellant objected that allowing Crawford to testify remotely would violate his right to confront her face to face. The trial court held a hearing on the motion after the jury was seated and sworn.

An investigator from the district attorney's office testified about the State's efforts to find Crawford. It applied for subpoenas twelve days before trial, and the investigator got the subpoenas five days later. He then tried to reach Crawford at the local address listed in the offense report, at another local address he found in public records, and at her

father's address in North Texas, but she was not there.   He checked public records and social media but found nothing useful.   Finally, the victim connected with Crawford through a Facebook account that used Crawford's middle name instead of her first.   The investigator spoke to her for the first time the day after the jury was seated.   It took him eight days to reach her.

Crawford appeared at the hearing via Zoom and testified that she lived in Pagosa Springs, Colorado and had lived there since shortly after reporting the victim's outcry to law enforcement.   She testified that she could not come to Texas to testify in person for three reasons: she feared retaliation, she was caring for her husband who had a broken back, and she had a conflicting court appearance in Colorado.

As for her fear of retaliation, Crawford testified that in the weeks following her report to the sheriff, someone broke into her house three times and people began driving by and saying that she and her family were "fixing to die."   She attributed these threats and break-ins to Appellant's friends and family.   She fled Texas within a month or two of reporting the outcry—going first to Oklahoma and then to Colorado—and stayed "as far under the radar as [she] could" by renting a house under a friend's name and refusing to keep a "registered" phone number.   She was afraid to return to Texas to testify "because of the family and friends that [Appellant] does have in the area and how far we've had to go to stay away from them and them not be able to find us."   She was skeptical of the district attorney's ability to protect her if she returned for trial, explaining, "To be quite honest, they wouldn't protect me when I was there.   I'm not trusting them to protect me

when I come back." She admitted that nothing physically prevented her from travelling to Texas "other than the fear of being killed[.]"

At the end of the hearing, the trial judge said, "Well, I think the current situation is distinguishable from *Haggard*, and I don't have a problem with allowing the witness to appear remotely," but he expressed reservations about Crawford calling from her house. The prosecutor promised to find a suitable environment for Crawford's Zoom call, but he wanted to get the case started while his office worked out the logistics. The judge responded, "Well, to that end, the Court will find that there is a necessity shown. It's just the connection we saw right there is atrocious."

When the State called Crawford as a witness, Appellant renewed his confrontation objection. The judge again overruled it: "We'll find there is a necessity for it." Crawford testified in front of the jury via Zoom with minor technical difficulties.

The court of appeals held that the trial court's "conclusory finding that 'there is a necessity shown'" was not specific enough to meet the requirements of *Maryland v. Craig* and that Crawford's excuses were inadequate to show necessity. *McCumber*, 2023 LEXIS 4321 at *14, *19. It reasoned that her fear of retaliation was "not proven to be grounded on anything more than the witness's subjective belief." *Id.* at *23.

## II. Confrontation Clause

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The right to confront witnesses face to face lies at "the core of the values furthered by the Confrontation

Clause." *Coy v. Indiana*, 487 U.S. 1012, 1016-17 (1988). But the right is not absolute and may give way to other important public-policy interests. *Id.* at 1020-21.

Physical, face-to-face confrontation may be denied when (a) necessary to further an important public interest, and (b) the reliability of the testimony is otherwise assured. *Maryland v. Craig*, 497 U.S. 836, 850 (1990). The trial court must make a single finding before allowing remote testimony: that the accommodation is necessary to further an important public-policy interest. *Id.* at 850, 855.

In *Craig*, the trial court allowed a child victim of sexual abuse to testify via a two-way closed circuit television system. The state had an important public-policy interest in protecting child victims of abuse from the trauma of testifying. *Id.* at 855. The trial court's decision was justified if it found that providing the accommodation was necessary to further that interest. *Id.*

> The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of *the particular child witness* who seeks to testify.

*Id.* (emphasis added).

*Craig* did not require a trial court to explain the interest it finds important. The trial court only needs to show that it made such a finding. *See Lively v. State*, 968 S.W.2d 363, 367 (Tex. Crim. App. 1998) (noting, "Nothing in [*Craig*] requires that a trial court make explicit, as opposed to implicit, findings regarding the necessity of a special procedure to protect a … witness."). But unless evidence is heard and a finding made,

*Craig*'s requirements are not met.   *Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim.

App. 2020).   In *Haggard*, neither requirement was met.

Haggard was charged with sexual assault, and the trial court allowed a nurse

examiner to testify remotely from out of state.   *Id.* at 323.   The State had not

subpoenaed her, and three days before trial she said she would not appear because it

would be inconvenient.   *Id*. at 324.   Without hearing evidence, the trial court reasoned

that *Craig* did not apply to an expert witness.   *Id.* at 327.   The closest it came to making

a necessity finding was to observe that the State did not have time to subpoena her.   *Id.*

We held that *Craig* applies to expert witnesses, and the trial court violated *Craig*

by failing to make a necessity finding.   *Id.*   Allowing the witness to testify remotely

served no important public policy because the State could have subpoenaed the available

witness but "chose not to."   *Id.*   Convenience of the witness was insufficient

justification for dispensing with face-to-face confrontation.   *Id.* at 328.

**III.   Analysis**

**A.   Standard of Review**

We review *de novo* the importance of a public-policy interest used to justify

interfering with the Confrontation Clause.   *See Haggard*, 612 S.W.3d at 327; *Sims v.

State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019) (questions of law are reviewed *de

novo*).   The need for remote testimony to further an important public-policy interest is a

mixed question that requires an application of law to fact.   *See Guzman v. State*, 955

S.W.2d 85, 89 (Tex. Crim. App. 1997).   We afford "almost total deference" to the trial

court's determinations of mixed questions supported by the record when the resolution of those questions turns on an evaluation of credibility or demeanor. *Id.*

We view the record evidence and all reasonable inferences in the light most favorable to the trial court's ruling and will uphold the ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). This is so even if the trial court gave the wrong reason for its decision or no reason at all. *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990). In our review, we assume that the trial court credited or discredited witness testimony in whatever way supports its decision. *State v. Ross*, 32 S.W.3d 853, 855-59 (Tex. Crim. App. 2000). Thus, we will uphold the trial court's decision here if the record supports a finding of necessity to further any important, public-policy interest.

**B. Finding Requirement**

We first address whether the trial court met *Craig*'s finding requirement. Before allowing Crawford to testify remotely, the court held a hearing and heard evidence. At the conclusion of the hearing, the court noted that the case was distinguishable from *Haggard* and found that "there is a necessity shown." We can reasonably infer from this explicit finding that the court found that an important public policy interest necessitated Crawford's remote testimony. *See Villarreal*, 935 S.W.2d at 138 (requiring appellate courts to make all reasonable inferences in favor of the court's ruling); *Lively*, 968

S.W.2d at 363 (noting that findings under *Craig* may be implicit). Thus, the court's necessity finding adequately met *Craig*'s requirement. *Craig*, 197 U.S. at 850.

Appellant and the dissent argue that the court's necessity finding was not "case-specific" because it included no supporting details. They argue that the finding did not explain which of Crawford's excuses the court relied on or why they justified her accommodation. But "case-specific" does not mean a factually detailed finding; it means a finding that the "particular" witness needs an accommodation. *Craig*, 497 U.S. at 855. Contrary to Appellant's claim, *Haggard* did not require factually detailed findings, either. *Haggard*, 612 S.W.3d at 327.

Appellant also argues for more detailed findings so that appellate courts do not have to speculate on the reasons for the trial court's decision. But given the standard of review, speculation is not in play; instead, the reviewing court must uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Villarreal*, 935 S.W.2d at 138. An evaluation of the record does not require speculation.

## C. Necessary to Further an Important Public-Policy Interest

Crawford gave three reasons for not coming to Texas to testify; chief among them was her fear of retaliation. Because preventing retaliation is an important public-policy interest, and the trial court's necessity finding on that interest was supported by the record, we do not address the other two reasons that Crawford gave.

Retaliation is a crime.   Tex. Penal Code §36.06.   Protecting witnesses from retaliation is an important and "even compelling" public-policy interest.   *See Romero v. State*, 173 S.W.3d 502, 506 (Tex. Crim. App. 2005).   It is so important that the Legislature has extended protection to "every category of person who might" have information that may lead to an offender's arrest.   *See Cada v. State*, 334 S.W.3d 766, 771-72 (Tex. Crim. App. 2011).   Witnesses and potential witnesses will be less willing to perform their "vital public duties" if they fear retribution.   *See id.*

This case exemplifies that reality.   Crawford testified that she experienced threats and break-ins soon after she reported the victim's outcry to law enforcement; she believed the harassment was prompted by her report; she attributed the harassment to Appellant's comrades; she fled Texas because of it; she feared for her life if she returned to testify against Appellant; and she refused to do so voluntarily.   Her testimony, if credited, supports the trial court's implicit finding that allowing her to testify remotely was necessary to prevent witness retaliation.   We must assume that the trial court credited her testimony.   *See Ross*, 32 S.W.3d at 855-57.   The court of appeals erred in substituting its own view of Crawford's credibility rather than deferring to the trial court's credibility judgment.   *McCumber*, 2023 LEXIS 4321, at *6-8.

Appellant and the dissent argue that Crawford lied about being afraid of retaliation.   They cite her failure to report the threats and break-ins and her willingness to give her full address when questioned in the hearing.   No one asked whether she reported the harassment, but even if she did not, and even though she gave her address,

we would still defer to the trial court's implicit credibility finding in Crawford's favor. *See Guzman*, 955 S.W.2d at 89.

The dissent suggests that we should not defer to the trial court's finding in favor of Crawford's credibility because of the distractions and technical issues during the pre-trial Zoom hearing. But that would not justify discarding the almost-total deference we owe to the trial court's credibility decisions. Even when no witnesses testify and all the evidence is presented through affidavits, depositions, or interrogatories, we still owe the same level of deference. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006). The quality of the Zoom testimony is irrelevant to the deference owed the trial court's credibility determination.

Appellant and the dissent claim that even if Crawford were afraid, that would not justify allowing her to testify remotely. They point to *Romero*'s holding that a witness's subjective fear of retaliation did not justify interfering with the defendant's confrontation rights. *Romero*, 173 S.W.3d at 506. But the witness in *Romero* failed to provide "any concrete reason for suspecting retaliation." *Id.* Crawford testified to the basis for her fear—death threats and break-ins at her home soon after her report to the sheriff—while the witness in *Romero* only cited the way the defendant looked at him and the defendant's commission of a violent crime against a third party. *Id.* *Romero* is distinguishable from this case.

Appellant argues that other public-policy considerations like the duty of candor to the tribunal and encouraging early trial preparation should be considered in assessing the justification for allowing Crawford to testify remotely. Assuming, without deciding, that such countervailing considerations are called for, they are not persuasive here because there was neither a lack of candor nor unreasonably slow trial preparation by the prosecution.

Appellant bases his lack-of-candor argument on the prosecution's announcements of ready at earlier trial settings when Crawford had not yet been found. He maintains that the State could not have been ready because Crawford was an important witness, and thus its announcements of ready were disingenuous. But even if the State did announce ready at earlier trial settings—a matter of dispute—that would not support the lack-of-candor claim, and "ready" does not mean optimally prepared.

Most of our caselaw about the State's announcement of ready derives from Article 32A.02 of the Texas Code of Criminal Procedure—the Speedy Trial Act; it required the court to set aside an indictment if the State was not ready in a certain timeframe. Acts 1977, 65th Leg., R.S., ch. 787, § 1, 1977 Gen. Laws 1970 (repealed 2005). It has since been repealed. Act of June 18, 2005, 79th Leg., R.S., ch. 1019, §2, 2005 Gen. Laws 3464. But we still use Speedy Trial Act caselaw to decide whether the State is ready under Article 17.151, another statute that requires the State to be ready for trial in a certain time frame. *Jones v. State*, 803 S.W.2d 712, 717 (Tex. Crim. App. 1991).

While the Speedy Trial Act was effective, we never adopted a bright line rule for how much or what type of evidence the State must have available to be "ready" for trial. *Behrend v. State*, 729 S.W.2d 717, 720 (Tex. Crim. App. 1987). We noted that if the State did not have a key witness or piece of evidence, that could suggest that it was not ready. *Barfield v. State*, 586 S.W.2d 538, 542 (Tex. Crim. App. 1979). But so long as the State was prepared to go to trial and "in good faith was ready to attempt with witnesses or evidence to persuade a jury" of the charged offense, it was ready. *Behrend*, 729 S.W.2d at 721.

We apply the same reasoning here. The State's ability to make a *prima facie* case did not depend on Crawford; the victim's testimony alone would have been enough to support a conviction. The State claimed that it was ready to try the case in good faith without Crawford, and Appellant does not contest its good faith claim. The lack-of-candor argument is unfounded.

Appellant also claims the State's trial preparation was dilatory because it did not start looking for Crawford until eight days before jury selection. Ideally, it should have started sooner. But eight days is reasonably prompt compared with statutory timeframes for preparing for hearings and trial. For example, the defense is entitled to only ten days to "respond" to a new or amended charging instrument. Tex. Code Crim. Proc. art. 27.11 (new charging instrument), 28.10 (amended charging instrument). It is entitled to only ten days' notice of a pretrial hearing. Tex. Code Crim. Proc. art. 28.01 § 2. And it must raise pretrial matters no fewer than seven days before the hearing. *Id.* By comparison,

beginning the search for Crawford eight days before trial was not dilatory. *Cf. Haggard*, 612 S.W.3d at 327 (noting that the State knew where its witness was but chose not to subpoena her); *see also Barber v. Page*, 390 U.S. 719, 724-25 (1968) (holding that a prosecutor could not introduce the out-of-court testimony of a witness when the prosecutor could have easily secured the witness's presence at trial but made no effort to do so).

## IV.   Conclusion

The trial court's necessity finding was constitutionally sufficient and supported by the record.   Accordingly, we reverse the judgment of the court of appeals and remand to that court for further proceedings.

Delivered:   June 19, 2024

Publish