**Reversed and Remanded and Opinion filed February 27, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00048-CR

**CHAMPAGNE SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1699492**

## O P I N I O N

A Harris County grand jury indicted appellant Champagne Smith for the second-degree felony offense of aggravated assault. At her January 2023 trial, the court required all persons, including witnesses, to wear facial coverings while in the courtroom unless in-court identification was needed. The jury found appellant guilty. The dispositive question in this appeal is whether the trial court's witness masking policy complied with the Sixth Amendment's guarantee that, in all criminal prosecutions "the accused shall enjoy the right . . . to be confronted with the

witnesses against him."  Because we conclude that the trial court's policy did not comport with this guarantee, we reverse and remand for a new trial.

## Background

The indictment alleged that appellant unlawfully, intentionally, and knowingly caused bodily injury to Tajada Lewis by striking Tajada with a deadly weapon, a wrench.  This charge arose out of a physical confrontation involving appellant and her sisters, Keitrick Kellup and Kenyetta Smith, who together allegedly assaulted Tajada and Ariell Kellup (the "Complainants").

The following was Ariell's version of events.  Tajada and Ariell were temporarily staying with Ariell's brother, Edward, and his wife, Keitrick.  Keitrick and Ariell did not "get along," and Keitrick wanted Tajada and Ariell to leave.  On the day in question, Keitrick and Ariell "exchanged words."  Appellant was not present during this verbal exchange.  Soon after, and in part to avoid any physical confrontation, Tajada and Ariell left the house and drove with another person, Mitchell, to a parking lot nearby, where they discussed plans to stay with another relative.

About ten minutes later, Keitrick and her sisters drove into the lot and blocked Complainants' car from leaving.  Appellant and Keitrick approached Complainants' car.  Appellant was yelling.  Then Keitrick broke the passenger window with a socket wrench.  Ariell jumped from the car and ran around the lot while verbally taunting appellant and her sisters.  Appellant caught up and tried to kick Ariell, but missed; Ariell then hit appellant, who fell to the ground.  Joining the fray, Kenyetta attempted to spray Ariell with pepper spray, but instead sprayed herself.

Things quickly escalated when Keitrick used the wrench to hit Ariell in the head at least three times.  Meanwhile, appellant and Kenyetta focused their attention

2

on Tajada, who came to Ariell's aid. Ariell saw appellant and Kenyetta stomping on Tajada. Ariell could not recall how the fight ended but remembered picking up Tajada and putting her in the car. Tajada was bleeding significantly from her back, which Ariell tried to stop by applying pressure. Ariell and Tajada were driven to the hospital. Both suffered injuries, but Tajada's were more significant. Her lung collapsed and she had several cuts that needed stitches or staples. While Ariell was released from the hospital after one day, Tajada remained for almost a week.

Tajada's testimony largely aligned with Ariell's. After seeing Keitrick hit Ariell with the wrench, Tajada came to help. Tajada tried to take the wrench from Keitrick, but as she did, appellant hit her in the back and then Keitrick continued "strik[ing her] in the back." According to Tajada, appellant was the first person to hit both Tajada and Ariell. While Ariell was on the ground bleeding from the head, appellant and Kenyetta held down Tajada while Keitrick hit Tajada with the wrench. Like Ariell, Tajada did not remember how the fight ended. Tajada "blacked out" while in the car and woke up at the hospital.

Houston Police Department Officer Nicolas Holt was dispatched to the hospital in response to the assault. He interviewed Tajada and Ariell and completed a report. Officer Holt testified that the wrench used in the attack was a deadly weapon.

Tajada and Ariell filed a report with Detective Kelli Yeamans of the Houston Police Department Family Violence Division. Detective Yeamans attempted several times to contact appellant, Keitrick, and Kenyetta, as well as Edward and Mitchell, leaving her contact information. None of the suspects or witnesses ever responded. She determined that Ariell and appellant engaged in "mutual combat," but Tajada was not involved in the initial altercation. Detective Yeamans testified that the wrench used in the attack was a deadly weapon.

The trial court required everyone in the courtroom to wear surgical masks throughout proceedings, including during voir dire and all witness testimony, except when necessary for in-court identification. Before voir dire, appellant's counsel objected to this requirement on Sixth Amendment grounds. Counsel complained that masking witnesses during live testimony would inhibit the jury's ability to fully assess witness demeanor and credibility. The State offered no response to the objection, and the court overruled it. The court made no findings, and no party requested them. The record sufficiently demonstrates the court enforced its masking policy.[1]

The State's theory was that appellant was criminally responsible for Keitrick's assault of Tajada under the law of parties. The trial court included the following instruction in the jury charge:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both.
>
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

---

[1] The State cites one exchange during Tajada's testimony that it contends illustrates witness masking was not necessarily consistent, though the State does not argue that appellant has waived her complaint based on this single example. Viewed as a whole, however, the record indicates masking was required throughout the trial, and the State's reference to Tajada's testimony does not show otherwise. Tajada was the last of the State's four witnesses. When she took the stand, Tajada was asked to identify appellant. At the State's request, the court instructed everyone to remove their masks. After she identified appellant, the court instructed everyone to replace their masks. The record does not indicate that Tajada removed her mask at any time thereafter.

The jury found appellant guilty of aggravated assault and assessed punishment at ten years' confinement with a recommendation of community supervision and a $10,000 fine. The trial court signed a judgment in accordance with the jury's verdict. Appellant did not file a motion for new trial.

## Analysis

### A. Evidentiary Sufficiency

In her first issue, appellant argues that the evidence is legally insufficient to support the verdict of aggravated assault under the law of parties. Appellant asserts that the State failed to prove that appellant committed an act in furtherance of Keitrick's assault with the wrench and also failed to prove that appellant knew that Keitrick would use the wrench as a deadly weapon. We address this issue first because it would afford appellant the greatest relief if sustained. *See Finley v. State*, 529 S.W.3d 198, 202 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

#### 1. *Standard of Review and Applicable Law*

In reviewing a judgment of conviction for legal sufficiency, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of evidentiary weight and witness credibility. *See Braughton v. State*, 569 S.W.3d 592, 607-08 (Tex. Crim. App. 2018); *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13.

We measure the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Braughton*, 569 S.W.3d at 608. A person commits the offense of aggravated assault if the person commits assault as defined in Penal Code section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. *See* Tex. Penal Code § 22.02(a). A person commits assault if she intentionally or knowingly causes bodily injury to another. *Id.* § 22.01(a)(1). Bodily injury means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8); *Garcia v. State*, 667 S.W.3d 756, 762-63 (Tex. Crim. App. 2023). "Deadly weapon" includes anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Penal Code § 1.07(a)(17)(B); *Rodriguez v. State*, 629 S.W.3d 229, 236 (Tex. Crim. App. 2021).

Under the law of parties, a "person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code § 7.01(a). Under section 7.02(a)(2), a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

In performing a legal sufficiency analysis in a law of parties case, "we should look at events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common

design to do the prohibited act." *Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010). "The jury may infer the requisite mental state from (1) the acts, words, and conduct of the defendant, (2) the extent of the injuries to the victim, (3) the method used to produce the injuries, and (4) the relative size and strength of the parties." *Rhymes v. State*, 536 S.W.3d 85, 95 (Tex. App.—Texarkana 2017, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). But without evidence of intentional participation by the accused, an accused may not be convicted under the law of parties. *Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016).

2. *Application*

Viewing the evidence most favorably to the verdict, appellant and Kenyetta attacked and stomped on Tajada, who came to help Ariell defend against Keitrick's attack. Tajada tried to take the wrench from Keitrick, but appellant hit Tajada in the back and then Keitrick continued striking her in the back. According to Tajada, while Ariell was on the ground bleeding from the head, appellant and Kenyetta held down Tajada while Keitrick hit Tajada repeatedly with the wrench.

This evidence is legally sufficient to support a finding that Keitrick committed the offense of aggravated assault against Tajada. The evidence supports a reasonable inference that Keitrick intentionally or knowingly caused bodily injury to Tajada and used a deadly weapon, a socket wrench, during the assault.

The evidence is also legally sufficient to support a finding that appellant is criminally responsible for the aggravated assault committed by Keitrick under the law of parties. Based on Tajada's direct testimony, the jury reasonably could have found that appellant aided or attempted to aid the wrench assault by holding Tajada while Keitrick hit her repeatedly with the wrench.

7

Finally, viewing all the circumstances before and during the commission of the aggravated assault, the jury reasonably could have found that appellant intended to promote or assist the commission of the offense. Under section 7.02(a)(2), the words "acting with intent to promote or assist the commission of the offense" mean, at a minimum, that a defendant must act intentionally with respect to the result elements of a result-oriented offense. *Nava v. State*, 415 S.W.3d 289, 298-99 (Tex. Crim. App. 2013). The relevant type of aggravated assault—by causing serious bodily injury—is a result-oriented offense. *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). The jury could have inferred that appellant acted with the required intent because she held Tajada as Keitrick struck her with the wrench. Evidence of criminal responsibility for another's commission of aggravated assault is sufficient if the appellant aids or assists the use of a deadly weapon as the assault is happening. *See Briggs v. State*, No. 06-22-00057-CR, 2023 WL 3033334, at *4-5 (Tex. App.—Texarkana Apr. 21, 2023, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to support conviction under law of parties when defendant actively participated in burglary and execution-style shooting of victim).

We hold legally sufficient evidence supports the verdict against appellant. We overrule appellant's first issue.

## B.     Witness Masks and the Confrontation Clause

In part of her second issue, appellant contends that the trial court's witness masking policy violated her Sixth Amendment right to confront accusing witnesses.[2] The Sixth Amendment provides:  "In all criminal prosecutions, the accused shall

---

[2] Appellant asserts multiple constitutional violations based on the court's requirement that jurors wear masks during voir dire and that witnesses wear masks while testifying. We focus solely on the Sixth Amendment Confrontation Clause argument as applicable to witness masking because it is dispositive.

8

enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

1.    *Applicable Law*

The Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. *Maryland v. Craig*, 497 U.S. 836, 844 (1990); *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). Among the right's fundamental features, it "'permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.'" *Craig*, 497 U.S. at 846 (quoting *California v. Green*, 399 U.S. 149, 158 (1970)). The confrontation right compels an accuser "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895). Observation of demeanor, together with other confrontation elements—physical presence, oath, and cross-examination—advance the Confrontation Clause's central purpose to ensure that evidence admitted against the criminally accused is reliable and subject to rigorous adversarial testing. *Craig*, 497 U.S. at 846; *see Crawford v. Washington*, 541 U.S. 36, 61 (2004).

The face-to-face confrontation guarantee may be abridged, at a minimum, only when necessary to further an important public policy. *See Craig*, 497 U.S. at 850; *Coy*, 487 U.S. at 1021. Any such deprivation must be justified by case-specific evidence supporting a court finding of necessity. *See Craig*, 497 U.S. at 855; *Haggard v. State*, 612 S.W.3d 318, 325 (Tex. Crim. App. 2020); *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005).

## 2. *Application*

Appellant seeks a new trial because the court's witness masking requirement violated her confrontation rights by inhibiting the jury's ability to assess the demeanor and credibility of the witnesses. According to appellant, we must reverse because there was no finding and no evidence that witness masking was necessary when this trial occurred "long after the height of the pandemic, and the court could have taken other precautionary measures like social distancing."

The State responds that the witnesses' faces remained partially visible despite masking, and therefore appellant was not entirely deprived of face-to-face confrontation. The State cites numerous state and federal decisions forming an "overwhelming consensus" that no Confrontation Clause violation occurs when, during a public health crisis, a witness is required or elects to wear a surgical mask.

The court's witness masking requirement compromised the demeanor element of the face-to-face confrontation right. *See Romero*, 173 S.W.3d at 505-06. As the Court of Criminal Appeals observed in *Romero*, a person's face is "the most expressive part of the body and something that is traditionally regarded as one of the most important factors in assessing credibility." *Id.* at 505-06.[3] While the *extent* to which a jury's ability to assess demeanor may be debatable when only portions of the face are covered, concealing a witness's facial features such as mouth and nose affects at least in part the fact finder's capability to assess demeanor, as several of the cases upholding witness masking during COVID-19 trials acknowledge.[4]

---

[3] One study concludes that wearing face masks impairs others' ability to accurately recognize the wearer's facial expressions, including emotions such as disgust, fear, surprise, sadness, or happiness. *See* Mike Rinck, Maximillian A. Primbs, Iris A. M. Verpaalen, & Gijsbert Bijlstra, *Face masks impair facial emotion recognition & induce specific emotion confusions*, 7 Cognitive Research 83 (2022), *available at* https://doi.org/10.1186/s41235-022-00430-5.

[4] *See, e.g.*, *State v. Hunt*, 293 A.3d 423, 432-33 (Me. 2023) (masking is slight impairment); *People v. Alvarez*, 290 Cal. Rptr. 3d 346, 352-54 (Cal. Ct. App. 2022); *State v. Jesenya O.*, 493

The State's initial point—the constitutional deprivation was merely partial and not complete—cannot carry the day. As Supreme Court jurisprudence makes clear, any deviation from traditional face-to-face confrontation must be supported by case-specific evidence. *Craig*, 497 U.S. at 850; *Coy*, 487 U.S. at 1021; *see also Romero*, 173 S.W.3d at 506. No evidence was presented here. The record does not reveal that any person in the courtroom was diagnosed as COVID-19 positive or was otherwise ill, showing COVID-19 symptoms, immunocompromised, or unvaccinated.[5] In two recent cases tried during the pandemic, the Eastland and Dallas Courts of Appeals upheld deviations from traditional face-to-face confrontation by permitting remote testimony of particular witnesses based on witness-specific COVID-19 concerns. *See Meade v. State*, No. 11-22-00025-CR, 2023 WL 4769575, at *3 (Tex. App.—Eastland July 27, 2023, no pet.) (mem. op., not designated for publication); *Dies v. State*, 649 S.W.3d 273, 276-77 (Tex. App.—Dallas 2022, pet. ref'd). In *Meade*, the witness tested positive for COVID-19 the weekend before trial, *Meade*, 2023 WL 4769575, at *3; in *Dies*, one witness tested positive for COVID-19 and another was thirty-eight weeks pregnant, lived two hours away, and was under doctor's instructions to avoid travel. *Dies*, 649 S.W.3d at 276. This type of case-specific evidence is absent here.[6]

P.3d 418, 430-32 (N.M. Ct. App. 2021) (masking obfuscates two aspects of observation of witness demeanor), *rev'd on other grounds*, 514 P.3d 445 (N.M. 2022); *United States v. Crittenden*, No. 4:20-CR-7, 2020 WL 4917733, at *5-7 (M.D. Ga. Aug. 21, 2020); *United States v. James*, No. CR-19-08019-001-PCT-DLR, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020); *United States v. Clemons*, No. RDB-19-0438, 2020 WL 6485087, at *2-3 (D. Md. Nov. 4, 2020).

[5] The COVID-19 vaccine was available for all Texans beginning in March 2021. *Dies v. State*, 649 S.W.3d 273, 282 n.4 (Tex. App.—Dallas 2022, pet. ref'd).

[6] In another recent case involving witness masking, the Fort Worth Court of Appeals held that the trial court erred by allowing one witness to testify while wearing a mask in the absence of a sufficient particularized finding as to her need to do so. *Finley v. State*, 655 S.W.3d 504, 515 (Tex. App.—Fort Worth 2022, pet. granted). Here, the trial court made no findings, and our analysis focuses on whether evidence exists to support limiting the confrontation right.

The State supplies a healthy list of state[7] and federal[8] decisions holding that witness masking requirements during the COVID-19 pandemic did not violate the Confrontation Clause. All of these cases except one involved trials that occurred in 2020 or 2021 and were often subject to masking orders by state supreme courts or other authorities.[9]

Appellant's trial occurred in January 2023; by then, similar orders applicable at one time to Harris County jury trials had expired. In March 2020, the Governor declared a state of disaster for all Texas counties due to COVID-19. *See* The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2095 (2020). Beginning March 13, 2020, the Supreme Court of Texas issued a series of emergency orders requiring all Texas courts to take certain precautions in both civil and criminal trials to avoid risk to court staff, parties, attorneys, jurors, and the public. *See First Emergency Order Regarding the COVID-19 State of Disaster*, 596 S.W.3d 265 (Tex. 2020). For several months, the supreme court emergency orders, subject only to constitutional limitations, prohibited courts from conducting in-person proceedings, including in-person jury proceedings, that were inconsistent with the latest guidance by the Office of Court Administration ("OCA"). *See, e.g.*,

---

[7] *See People v. Wandrey*, 296 Cal. Rptr. 3d 460 (Cal. Ct. App. 2022); *Alvarez*, 290 Cal. Rptr. 3d at 352-54; *State v. Cuenca*, 524 P.3d 882, 888-89 (Idaho 2023); *People v. Lanaux*, No. 1-21-1038, 2023 WL 4561547, at *3-4 (Ill. App. Ct. July 17, 2022); *State v. Hardy*, 344 So. 3d 821, 834 (La. Ct. App. 2022); *Hunt*, 293 A.3d at 431-32; *Farmer v. State*, No. 1300, 2023 WL 2806062, at *6 (Md. Ct. App. Apr. 6, 2023); *State v. Modtland*, 970 N.W.2d 711, 717-21 & 720 n.3 (Minn. Ct. App. 2022); *State v. Voeltz*, No. A22-0726, 2023 WL 5341512, at *5-7 (Minn. Ct. App. Aug. 21, 2023); *State v. Mountain Chief*, 533 P.3d 663, 672-73 (Mont. 2023); *Peters v. State*, No. 82437, 2022 WL 17367580, at *1 (Nev. Nov. 30, 2022); *Jesenya O.*, 493 P.3d at 430-32; *Commonwealth v. Dixon*, 276 A.3d 794, 805 (Pa. Super. Ct. 2022).

[8] *See United States v. James*, No. CR-19-08019-001-PCT-DLR, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020); *United States v. Holder*, No. 18-cr-00381-CMA-GPG-01, 2021 WL 4427254, at *9 (D. Colo. Sept. 27, 2021); *Crittenden*, 2020 WL 4917733, at *5-7; *Clemons*, 2020 WL 6485087, at *2-3; *see also United States v. Maynard*, 90 F.4th 706 (4th Cir. 2024).

[9] The trial in *Hunt* occurred in February 2022. *Hunt*, 293 A.3d at 428.

*Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster*, 609 S.W.3d 135, 136-37 (Tex. 2020). Before in-person jury trials could be held, the OCA required that the county local administrative judge submit an operating plan, which was to mandate face coverings be worn by all persons at all times during trials. *See OCA, Guidance for All Court Proceedings During COVID 19 Pandemic*, pp. 5-7 (effective October 1, 2020; updated December 31, 2020), https://www.txcourts.gov/media/1450221/guidance-for-all-court-proceedings-during-covid-19-pandemic.pdf.

In response to a request from the Harris County Attorney, the Texas Attorney General issued an August 3, 2020 opinion stating that judges could require individuals in courtrooms to wear facial coverings if necessary to maintain order and safety. *See* Tex. Att'y Gen. Op. No. KP-0322, at *3-4 (2020). Consistent with the Attorney General's opinion, and pursuant to the OCA Guidance, the Harris County Local Administrative Judge submitted an operating plan along with a jury proceeding addendum, effective October 1, 2020. *See Jury Proceeding Addendum to COVID-19 Operating Plan for the Harris County Judiciary* 5 (eff. on and after Oct. 1, 2020), https://www.txcourts.gov/media/1450784/harris-county-jury-trial-plan.pdf. The plan required that all persons in a courtroom wear facial coverings during jury trial proceedings, from jury qualification through the end of trial. *Id.* The operating plan was re-adopted continuously until the requirements expired on August 1, 2022. *See Sixth Re-Adoption of the COVID-19 Operating Plan for the Harris County Judiciary District Courts, County Courts at Law & Probate Courts* (June 1, 2022) (on file with the Fourteenth Court of Appeals).

In addition to the operating plan in Harris County, subsequent supreme court emergency orders applicable to all counties permitted district courts to conduct in-person proceedings if the local administrative judge adopted minimum standard

health protocols that included masking, social distancing, or both. *See Thirty-Sixth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 897, 898 (Tex. 2021) (requiring face coverings to be worn over the nose and mouth); *Thirty-Eighth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 900, 901 (Tex. 2021). The language requiring masking was removed from the supreme court's emergency orders beginning in August 2021. *See Fortieth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 911 (Tex. 2021).

Thus, supreme court orders, OCA guidance, and a local operating plan that previously supported courtroom masking requirements in Harris County district courts had terminated months before the January 2023 trial in this case.

Meanwhile, the Governor issued an executive order on July 29, 2021 providing that "no government official may require any person to wear a face covering or to mandate that another person wear a face covering." *See* The Governor of the State of Tex., Exec. Order GA-38 (issued July 29, 2021), 46 Tex. Reg. 4913, 4914-15 (2021). GA-38 stated that it would supersede any face-covering requirement imposed by any local government entity or official, subject to certain exceptions. *See id.* at 4. Harris County Judge Lina Hidalgo issued a contradicting directive on August 17, 2021, which granted Harris County district courts discretion to require masking in courtrooms. *See* Harris Cty. Judge Lina Hidalgo, Eighth Order Authorizing Fever & Health Screening & Face Coverings in County Buildings (issued Aug. 17, 2021), *available at* https://agenda.harriscountytx.gov/2021/20210812Order1.pdf. The county simultaneously sued the Governor to enjoin GA-38. *See Abbott v. Harris County*, 672 S.W.3d 1, 6-7 (Tex. 2023). A Travis County district court denied the state's plea to the jurisdiction and granted a temporary injunction prohibiting the Governor and the Attorney General from

enforcing GA-38 in Harris County. *Id.* at 7. The Third Court of Appeals affirmed the injunction. *Abbott v. Harris County*, 641 S.W.3d 514, 530 (Tex. App.—Austin 2022), *rev'd*, *Abbott*, 672 S.W.3d 1. The supreme court granted review and reversed. *Abbott*, 672 S.W.3d at 21. The court held that GA-38, issued pursuant to the Texas Disaster Act, carried the force of law and superseded any contrary orders of local officials, including Judge Hidalgo's order. *See id.* at 12, 19. Though the supreme court did not decide the matter until June 30, 2023, GA-38 remained effective during the state's appeal because the trial court's injunction was automatically stayed. *Abbott*, 672 S.W.3d at 7 (citing Tex. R. App. P. 29.1(b)); Tex. Civ. Prac. & Rem. Code § 6.001 (state exempt from bond requirements in civil appeal); *see In re State Bd. for Educator Certification*, 452 S.W.3d 802, 804-07 (Tex. 2014). GA-38 expired in June 2023. *Abbott*, 672 S.W.3d at 9 n.23. Under these circumstances, County Judge Hidalgo's order could not have supported a witness masking requirement in a January 2023 jury trial.

Several courts have referenced publicly available United States Centers for Disease Control ("CDC") COVID-19 tracking data or previously promulgated guidelines as demonstrating the necessity of limiting face-to-face confrontation in jury trials.[10] But those sources do not indicate any particular need for a prophylactic witness masking policy during a January 2023 Harris County jury trial. Throughout the pandemic, the CDC published periodically a Community Profile Report, which tracked data at a county level for COVID-19 test results, COVID-19 hospitalizations, COVID-19 deaths, and other related COVID-19 information. The

---

[10] *E.g.*, *Maynard*, 90 F.4th at 710-11 (refers to trends); *Alvarez*, 290 Cal. Rptr. 3d at 352-53 (refers to guidelines); *Modtland*, 970 N.W.2d at 718-19 (refers to guidelines); *James*, 2020 WL 6081501, at *1 (refers to both guidelines and trends); *Crittenden*, 2020 WL 4917733, at *6 (refers to guidelines); *Clemons*, 2020 WL 6485087, at *2 (refers to guidelines).

final report issued in February 2023.[11] According to that report, the Harris County COVID-19 "community level" was designated as "Low." At that time, the county was experiencing 5 - 10 new COVID-19 hospital admissions per 100,000 people; and 1,000 - 4,999 new COVID-19 cases over the preceding seven days.[12] By February 2023, 60%-69.9% of the county population had received a completed primary series vaccination.[13] Other CDC COVID-19 tracking data as of January 7, 2023[14] for Texas showed 3,837 new weekly hospital admissions statewide,[15] 3,090 current COVID-19 hospitalizations statewide,[16] 76.2% of Texans had received at least one vaccine dose,[17] and 63.2% of Texans had received completed the primary series of vaccination doses.[18]

When special witness procedures compromise a defendant's face-to-face confrontation right without evidence that the procedures are necessary to advance an

---

[11] *See COVID-19 Community Profile Report*, *available at* https://healthdata.gov/ Health/COVID-19-Community-Profile-Report/gqxm-d9w9/about_data.

[12] *COVID-19 Community Profile Report*, *available at* https://healthdata.gov/ Health/COVID-19-Community-Profile-Report/gqxm-d9w9/about_data. Harris County's 2020 population according to the 2020 decennial census was 4,731,145. *See United States Census Bureau, Harris County, Texas*, https://https://data.census.gov/profile/Harris_County,_ Texas?g=050XX00US48201.

[13] *See COVID-19 Community Profile Report*, available at https://healthdata.gov /Health/COVID-19-Community-Profile-Report/gqxm-d9w9/about_data*.

[14] Appellant's trial began on January 12, 2023.

[15] *See COVID Data Tracker, Ctrs. For Disease Control & Prevention*, https://covid.cdc. gov/covid-data-tracker/#trends_select_select_00 (select "Texas" from "Select a geographic area" dropdown and "Weekly COVID-19 New Hospital Admissions" from "View (left axis)" dropdown).

[16] *See id.* (select "Texas" from "Select a geographic area" dropdown and "Currently Hospitalized COVID-19 Patients" from "View (left axis)" dropdown).

[17] *See* https://covid.cdc.gov/covid-data-tracker/#vaccination-demographics-maps (select "At Least One Dose," select "Jan. 7, 2023" from "Date of Administration" dropdown, hover mouse over Texas on map).

[18] *See id.* (select "Completed Primary Series," select "January 7, 2023" from "Date of Administration" dropdown, hover mouse over Texas on map).

important public policy, a Confrontation Clause violation has occurred. *See Craig*, 497 U.S. at 850; *Haggard*, 612 S.W.3d at 327-28; *Romero*, 173 S.W.3d at 506. We conclude that the trial court's witness masking requirement was not supported by any evidence that it furthered an important public policy in a January 2023 Harris County jury trial. Thus, appellant was entitled to full face-to-face confrontation of all witnesses consistent with the traditional norm of American criminal prosecutions. Because appellant did not receive that guarantee, we agree that appellant's Confrontation Clause rights were violated.

3.    *Harm*

We next consider whether appellant was harmed by the violation. A denial of physical, face-to-face confrontation is reviewed for harmless error. *Coy*, 487 U.S. at 1021; *Haggard*, 612 S.W.3d at 328. Constitutional error is harmful unless a reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a); *Haggard*, 612 S.W.3d at 328. We focus "not upon the perceived accuracy of the conviction or punishment, but upon the error itself in the context of the trial as a whole, in order to determine the likelihood that it genuinely corrupted the fact-finding process." *Snowden v. State*, 353 S.W.3d 815, 819 (Tex. Crim. App. 2011). That is, the reviewing court asks whether the error adversely affected "the integrity of the process leading to the conviction." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). A ruling that an error is harmless is a conclusion that the error could not have affected the jury. *See Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).

Any circumstance apparent in the record that logically informs the harm issue should be considered. *Snowden*, 353 S.W.3d at 822. Among factors we consider are: the nature of the error; the probable implications of the error; the importance of the affected evidence in the prosecution's case; whether the testimony was

17

cumulative; the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and the overall strength of the prosecution's case. *See Haggard*, 612 S.W.3d at 329 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)); *Wells*, 611 S.W.3d at 410.

The harm analysis in this context, however, "cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation" because "such an inquiry would obviously involve pure speculation." *Coy*, 487 U.S. at 1021-22. Instead, harm must be determined based on "the remaining evidence." *Id*. We nonetheless include in our review the substance of the evidence given in assessing whether there is a reasonable likelihood that the error affected the verdict. *Haggard*, 612 S.W.3d 328 n.18.

The State has the burden, as beneficiary of the error, to prove that the error is harmless beyond a reasonable doubt. *See Deck v. Missouri*, 544 U.S. 622, 635 (2005); *Haggard*, 612 S.W.3d at 328. Although appellant argued in her brief that the witness masking requirement constituted harmful error, the State did not substantively address the issue of harm in its brief. The State's harm arguments were limited to whether the venire masking requirement during voir dire was harmful.

Rule 44.2(a) requires an appellate court to reverse a judgment when constitutional error occurs unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. This rule together with binding high court precedent requires the State to come forward with reasons why the appellate court should find the error harmless. *Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). When the State does not attempt this showing in its brief, the "default" is to reverse the judgment. *See id.*; *see also Romero*, 173 S.W.3d at 506-07 (state failed to show constitutional error

was harmless beyond reasonable doubt); *Lamb v. State*, 603 S.W.3d 152, 162 (Tex. App.—Texarkana 2020, no pet.) (declining to independently conduct harm assessment of constitutional error when state failed to brief harm issue).

On this record and briefing, we cannot determine beyond a reasonable doubt that the jury's verdict could not have been affected by the witness masking requirement.

We sustain in part appellant's second issue, to the extent explained above. Appellant is entitled to a new trial. Given our conclusion, we need not address appellant's remaining arguments.

The judgment is reversed, and the case is remanded for a new trial.


/s/    Kevin Jewell
       Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

Publish – Tex. R. App. P. 47.2(b).